In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1731

STEVEN B. SCHULTZ,

*Petitioner-Appellee*,

*v.*

THOMAS F. PAGE, Warden,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 C 491—**Michael J. Reagan**, *Judge.*

ARGUED NOVEMBER 1, 2002—DECIDED DECEMBER 19, 2002

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner Steven B. Schultz filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 after the Appellate Court of Illinois affirmed his conviction for the November 7, 1995, murder of Betty Taft in Poplar Grove, Illinois. Prior to the trial, counsel for Schultz requested that Schultz be examined for fitness to stand trial as well as for his sanity at the time of the offense. The trial court granted the first request but not the second, and a doctor subsequently found Schultz fit for trial. After his conviction, Schultz appealed the denial of the sanity examination, but the appellate court affirmed the trial court's decision. Schultz then filed a petition for writ of habeas corpus in the South-

ern District of Illinois, which was granted. The State
of Illinois ("State" or "Illinois") now appeals the decision
of the district court. Because we find that the Illinois ap-
pellate court erroneously applied federal law, we affirm
the district court's decision.

## BACKGROUND

### A. Underlying Facts and Schultz's Murder Trial

Schultz was born in 1976 in Watseka, Illinois. To say
that his childhood was a troubled one is an understatement.
His mother apparently neglected him, preferring to spend
her time in local taverns, and his older sister served as
his primary caregiver. When Schultz was a young boy, a
teenage acquaintance sexually abused him. Schultz dropped
out of high school and studied for, but ultimately failed,
the GED exam. In 1994, Schultz spent two weeks in a
psychiatric hospital and was diagnosed with "affective
disorder bipolar, depressed." Other members of his im-
mediate family also have a history of mental illness, depres-
sion, and suicide. Schultz's father, who Schultz claimed
also physically abused him as a child, employed him
sporadically, but he was otherwise without employment.
While he was close to his older sister who cared for him
as a child, by November of 1995 Schultz lost contact with
her. Though things had not gone well for Schultz to that
point in his life, they certainly did not get better.

On November 7, 1995, Schultz killed his girlfriend, Betty
Taft, by choking her to death after tying her arms and
legs behind her back. The day after the murder, Schultz
told police that he killed Taft because she insisted that
"she wanted to be with her mother." The State charged
Schultz with first degree murder and scheduled his trial
in the Circuit Court of Boone County, Illinois, for May 6,
1996.

On May 1, 1996, Schultz's counsel filed a motion to have his client examined for fitness to stand trial. The following day Schultz's attorney received supplemental discovery from the State containing a letter written by Joan Lodge, a licensed clinical social worker at the Janet Wattles Center. The letter stated that Lodge had examined Schultz on March 14, 1996, after he complained of seeing bugs and worms on the walls while in pre-trial detention and that Schultz appeared depressed, that he reported sleep disturbance, and that he complained of little motor activity and poor concentration. Lodge noted the history of mental illness, depression, and suicide in Schultz's family as well as the fact that Schultz had been hospitalized for two weeks in 1994.

During the 1994 hospitalization, after diagnosing Schultz with "affective disorder bipolar, depressed" doctors prescribed the drugs Prozac and Depakote. Prozac is an anti-depressant and Depakote has recently been used to combat manic episodes, a condition where the patient experiences mood swings from euphoria to depression. Lodge recommended, after her March 14, 1996, evaluation of Schultz, that he again be given those medications. Claiming that this information raised a bona fide doubt about Schultz's sanity at the time of the crime, his attorney filed a separate motion on May 2 to have Schultz evaluated for his sanity at the time of the murder.

On May 2, the trial court addressed the May 1 motion for a fitness examination by appointing Dr. Terrance Lichtenwald, a clinical and forensic psychologist, to examine Schultz for fitness purposes. The trial judge emphasized that his concern in appointing Dr. Lichtenwald was the doctor's ability to administer the exam and report back to the court by ten o'clock the next morning, so as not to delay the trial schedule. Dr. Lichtenwald met with Schultz on the afternoon of May 2 for several hours,

administering various tests and reviewing reports on Schultz.

The following morning, the trial court held a hearing on Schultz's fitness to stand trial. Dr. Lichtenwald and two witnesses from the Boone County jail testified as to Schultz's current condition and complaints. Specifically, Dr. Lichtenwald opined that Schultz was fit to stand trial, and though he acknowledged Schultz's previous psychiatric hospitalization and prescription, he questioned the accuracy of Schultz's diagnosis. Interestingly, however, Dr. Lichtenwald stated on cross-examination that Schultz's hallucinations "could be part of some brain injury." He also conceded that given more time he would have conducted further testing into Schultz's childhood trauma and that eventually a neurological examination of Schultz might have been warranted or necessary. Following the hearing, the trial court ruled that Schultz was fit to stand trial.

The trial judge did not conduct any further hearing on the sanity issue and asked defense counsel whether notice of the insanity defense had been given according to Illinois law, 725 ILL. COMP. STAT. 5/115-6 and ILL. SUP. CT. R. 413(d). Schultz's attorney answered that notice had not been given because he had only filed the motion for a sanity examination the previous day, immediately after learning of Lodge's exam and his client's 1994 psychiatric hospitalization. After taking a short recess to consult Illinois case law, the trial judge denied Schultz's motion for a sanity examination.

The court based its ruling on the fact that notice of the insanity defense had not been given and that Dr. Lichtenwald's testimony revealed no reasonable basis from which to believe that an insanity defense could be raised. When Schultz's attorney pressed for clarification on the ruling, the trial judge responded that Dr. Lichten-

wald had "already done all the work" during his fitness examination of Schultz.

### B. Decisions of the Illinois Appellate Court & United States District Court

Schultz appealed his conviction, including the denial of an examination to determine his sanity at the time of the murder, to the Illinois appellate court. In affirming the trial court's decision not to appoint another psychiatrist, the appellate court found *Ake v. Oklahoma*, 470 U.S. 68 (1985), inapplicable. The appellate court noted properly that *Ake* supports the constitutional right of an indigent defendant, such as Schultz, to have a psychiatrist appointed to conduct a sanity examination when the indigent defendant has shown that his sanity at the time of the offense will be a "significant factor" at trial. *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). The appellate court's legal analysis of *Ake* as applied to Schultz's case, however, stated in its entirety:

> We find *Ake* inapplicable to the present case. Here, [Schultz's] sanity was never a factor, much less a significant factor. The State did not order psychiatric care to bolster its case, nor did [Schultz] ever raise the defense of insanity. Further, we acknowledge that [Schultz] did have access to psychiatric care, as he had been previously examined by Lichtenwald and Lodge. *Cf. People v. Johnson*, 154 Ill. 2d 356, 370 (1993).

*People v. Schultz*, No. 2-96-1318, Unpublished Rule 23 Order, at 30 (Ill. App. Ct., 2nd Dist., Sept. 29, 1998). The appellate court went on to hold that the trial court did not abuse its discretion under Illinois law in denying Schultz a psychiatric exam, in part, because the trial court had ample opportunity to evaluate Schultz and determine his credibility at various pre-trial hearings.

Schultz then filed a petition for writ of habeas corpus in the Southern District of Illinois alleging a denial of due process under *Ake*. A Magistrate Judge initially recommended that the petition be denied; the district court, however, granted Schultz's petition, finding that the trial court's decision not to appoint a psychiatrist was contrary to clearly established federal law as determined by the United States Supreme Court. In particular, the district court rejected the notion that Schultz's sanity at the time of the crime could not be a significant factor at trial. The district court likened Schultz's case to *People v. Kegley*, 529 N.E.2d 1118 (Ill. App. Ct. 1988), in which the Appellate Court of Illinois found more than sufficient evidence to require the appointment of a psychiatrist under *Ake*.

The district court noted that the trial court was aware from Dr. Lichtenwald's testimony that Schultz was hospitalized for bipolar disorder in 1994 and that Schultz stopped taking prescribed medication after his release from the hospital. The district court also noted that the trial court was aware that Schultz was treated for hallucinations while in pre-trial detention and that psychotropic medication was prescribed for him again. Finally, the district court highlighted the trial court's awareness of Schultz's peculiar behavior when arrested, when he confessed to the crime, and when he testified before the trial court at preliminary hearings. Specifically, the district court pointed to the fact that Schultz claimed: a) that the victim told him to choke her; and b) that he believed that if he confessed the State's Attorney would let him "walk free."

The State appeals and relies on three arguments to support reversal of the district court's decision. First, the State argues that the district court examined the incorrect state court decision by looking to the actions of the Illinois trial court because federal law requires the

district court to examine the ruling of the last state court to rule on the claim. This was the Illinois appellate court, which rejected Schultz's request with a brief review of *Ake*. Second, the State argues that the Illinois trial court did not issue a ruling contrary to *Ake* because Schultz based his request for a psychiatric exam specifically on the state statute and not under *Ake*. Finally, the State argues that the district court improperly concluded that the trial court's refusal to appoint the psychiatrist was contrary to the rule annunciated in *Ake*.

## ANALYSIS

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas relief only if the state court's decision on the merits of an issue was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2002); *Brown v. Sternes*, 304 F.3d 677, 690 (7th Cir. 2002).

We review a district court's findings of fact for clear error and its rulings on questions of law *de novo*. *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1044 (7th Cir. 2001). We also apply *de novo* review to determine whether a state court ruling was "contrary to," *id.*, or an "unreasonable application" of clearly established federal law, though "with a grant of deference to any *reasonable* state court decision" on the latter question, *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999) (emphasis in original). The state court decision is reasonable if it is "'minimally consistent with the facts and circumstances of the case.'" *Schaff*, 190 F.3d at 523.

## B. *Proper State Court Decision to Examine*

The State asserts correctly that a federal court reviewing a habeas petition should examine the decision of the last state court to rule on the merits of the issue. *Cossel v. Miller*, 229 F.3d 649, 654 (7th Cir. 2000). Here, the district court based its ruling on the decision of the Illinois trial court without examining the Illinois appellate court's rejection of Schultz's *Ake* claim. We will, however, examine the appellate court's treatment of Schultz's *Ake* claim, mindful of the fact that we can affirm on any ground not waived or forfeited in the district court. *Horton v. United States*, 244 F.3d 546, 549 (7th Cir. 2000). This determination disposes of the State's first argument that the district court reviewed the wrong state court decision.

We, likewise, dispose easily of the State's second argument that Schultz based his request for a psychiatrist only on a state statute and not under *Ake*. Because the parties argued the merits of Schultz's *Ake* claim in the Illinois appellate court, the merits of his *Ake* claim are properly before this Court. In effect, the State asks us to ignore its first argument (that we should look only to the Illinois appellate court) in order to adopt its second argument. We reject the State's argument that *Ake* was not properly raised by Schultz and address the merits of that claim below.

## C. *The Merits of Schultz's* Ake *Claim*

It bears noting that under Illinois law manic-depression, a bipolar disorder, might serve as a basis for finding a person legally insane. *See People v. Hammerli*, 662 N.E.2d 452, 456 (Ill. App. Ct. 1996) (affirming decision that defendant was guilty but mentally ill due to manic-depression); *see also People v. Black*, 10 N.E.2d 801, 803

(Ill. 1937) (discussing testimony of expert witness who diagnosed defendant as "suffering from manic-depressive insanity with alcoholism"); *Hall v. Pittenger*, 6 N.E.2d 134, 137 (Ill. 1936) (discussing testimony over whether defendant "had been suffering from a manic depressive form of insanity").

Though there is apparently no case directly holding that "affective disorder bipolar, depressed," from which Schultz suffers, would be sufficient to establish legal insanity, the Illinois courts have discussed Schultz's particular diagnosis as a mental illness, which could possibly lead to a finding that he was legally insane at the time of the crime. Whether or not he should or could assert an insanity defense, however, cannot be answered without appointing a psychiatrist. We must determine, therefore, whether the decision of the Illinois appellate court was "contrary to" or an "unreasonable application of" clearly established federal law.

A state court decision is "contrary to" Supreme Court precedent if: a) it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or b) the state court reaches a result opposite to the Supreme Court on facts that are materially indistinguishable from relevant Supreme Court precedent. *Ouska*, 246 F.3d at 1044. We will address only the first prong under the "contrary to" test.

As we noted above, the Supreme Court held as a matter of law in *Ake v. Oklahoma* that an indigent defendant is entitled to have a psychiatrist appointed to assist in his defense if the defendant shows that his sanity at the time of the crime will be a significant factor at trial. *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). The Illinois appellate court held that Schultz's sanity "was never a factor, much less a significant factor" because: 1) the State did not order psychiatric care to bolster its case; 2) Schultz did

not formally raise the insanity defense; and 3) Schultz had access to psychiatric care by Lodge and Dr. Lichtenwald.

First, the State's decision to order a psychiatric examination of a defendant has little to do with an indigent defendant's right under *Ake* to have a mental health expert assist in the preparation of his defense. A state-initiated, psychiatric examination of a defendant merely demonstrates that in such a situation the defendant is clearly entitled to his own expert and examination to help prepare his defense because the state has signaled that it may use psychological evidence against the defendant. The absence of such an examination by the State, however, cannot be used by a court to determine that an indigent defendant is not entitled to an examination when the defendant initiates the request for one. The State's belief that such absence is in some way relevant is unfounded. The appellate court's reliance on the fact that prosecutors did not initiate a psychiatric exam of Schultz, therefore, is misplaced.

Next, the appellate court stated that Schultz never formally raised the insanity defense. The court, presumably, is referring to the statutory procedures under Illinois law for asserting the insanity defense as they existed at the time of Schultz's trial. *See* 720 ILL. COMP. STAT. 5/6-2 (1996), *amended by* P.A. 89-404, § 15, eff. Aug. 20, 1995 (declared unconstitutional by *People v. Ramsey*, 735 N.E.2d 533 (Ill. 2000)); 725 ILL. COMP. STAT. 5/115-6 (1996); ILL. SUP. CT. R. 413(d). Because Schultz's trial counsel learned of his client's 1994 hospitalization and Lodge's March 1996 examination only days before the trial was scheduled to begin, and because counsel immediately requested both fitness and sanity examinations, we find it difficult to understand how he could have formally asserted an insanity defense before the appointment of a psychiatrist. We need not, however, delve further into Illinois law on this

procedure; we find that Schultz's request for a psychiatric examination sufficiently alerted the State and the trial court to the possibility that he might plead insanity.

Third, the appellate court based its rejection of Schultz's *Ake* claim by miscasting the nature of Lodge's and Dr. Lichtenwald's examinations. Lodge is a licensed clinical social worker, not a medical or psychiatric doctor, who examined Schultz on March 14, 1996, after he complained of hallucinations in pre-trial detention. While the State did not explain why it did not forward notice of this exam to Schultz's attorney until short days before trial, Lodge's examination did nothing to evaluate Schultz's sanity at the time of the crime.

Similarly, though he is a psychiatric doctor, Dr. Lichtenwald examined Schultz only for fitness to stand trial. While portions of that examination might be relevant or repeated during an examination as to his sanity at the time of the murder, it is difficult to understand why the Illinois appellate court considered a fitness examination sufficient for purposes of determining Schultz's sanity *at the time of the crime*. Such a determination runs counter to Illinois precedent clearly recognizing the inherent difference between the two examinations. *People v. Adamcyk*, 631 N.E.2d 407, 411 (Ill. App. Ct. 1996). While the State concedes as much, it argues that Schultz's access to some psychiatric care can be relevant to our determination. We are unpersuaded by this argument.

Furthermore, Dr. Lichtenwald's concessions regarding the additional testing he would have performed on Schultz as well as his testimony on the possible origin of Schultz's hallucinations as "part of some brain injury" support our conclusion that the examinations conducted by Lodge and Dr. Lichtenwald did not constitute sufficient psychiatric evaluation for determining whether Schultz was sane at the time of the crime.

Beyond rejecting the appellate court's assertions, there is ample evidence to suggest that Schultz's sanity at the time of the crime would be a significant factor at trial. *Ake*, 470 U.S. at 83. To begin with, Schultz was hospitalized for two weeks in a psychiatric institution in 1994, during which time doctors diagnosed him with "affective disorder bipolar, depressed" and prescribed the psychotropic drugs Prozac and Depakote. It is also unclear whether Schultz was still on this medication when he killed Taft. His family history of depression, suicide, and mental illness has been documented by mental health professionals. His parents abused or neglected him and an older, teenage boy sexually abused him as a child.

When Schultz was arrested, he claimed that the victim wanted him to choke her to death so that she could "be with her mother." He also testified that he thought the State's Attorney would let him "walk free" if he confessed to the crime. As the dissent characterized it, Schultz's "admission to the crime [was] saturated with psychological overtones." *People v. Schultz*, No. 2-96-1318, Unpublished Rule 23 Order, at 39 (Ill. App. Ct., 2nd Dist., Sept. 29, 1998) (Bowman, J., dissenting). Finally, during pre-trial detention Schultz complained of seeing bugs and worms on the wall. Schultz's behavior was erratic enough that the Boone County jail brought in Lodge to examine him. She concurred with Schultz's bipolar diagnosis and advised that he restart the medication originally prescribed during the 1994 hospitalization.

A state court decision is based on an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it unreasonably to the facts at hand. *Ouska*, 246 F.3d at 1044. The Illinois appellate court identified *Ake* in its decision, though it held that *Ake* was inapplicable after determining that Schultz's sanity "was never a factor, much less a significant factor." We turn now to whether the

appellate court unreasonably applied *Ake*, keeping in mind the appropriate deference we are to show the state court decision. *Schaff*, 190 F.3d at 522.

We find that the appellate court's treatment of *Ake* was not minimally consistent with the facts and circumstances of Schultz's case. *Schaff*, 190 F.3d at 523. We dismissed above each of the grounds upon which the appellate court determined that *Ake* did not apply and found that enough evidence existed to show that Schultz's sanity at the time of the crime would be a significant factor in his trial.

The appellate court's decision also runs counter to its own precedent. As the dissent in the appellate court pointed out, the Appellate Court of Illinois in *People v. Kegley* held that the defendant was entitled to a psychiatric examination under *Ake*. *People v. Kegley*, 529 N.E.2d 1118, 1123 (Ill. App. Ct. 1988). The court first held that Kegley's request for an examination was timely, even though it was made two days before trial. *Id.* at 1122. Schultz's attorney filed his motion for the appointment of a psychiatrist more than two days before trial and did so immediately upon learning of evidence that brought Schultz's sanity into question. Thus, Schultz's request was timely as well.

Similarly, the *Kegley* court found that enough evidence existed showing that Kegley's sanity at the time of the crime would be a significant factor at trial. *Id.* at 1122. In particular, the court pointed to Kegley's irrational behavior when he was arrested, including asking the police to shoot him and hitting his head and shoulders against the bars and walls of his cell. *Id.* at 1119. Kegley's public defender commented that he "had become 'an intense religionist to such exaggerated extent that the fervor borders on the irrational.'" *Id.* The court also noted his numerous hospitalizations for mental health and substance abuse problems, including testing positive for

drugs and alcohol when arrested, and his expression of suicidal desires to his attorney during trial. *Id.* at 1120.

Schultz's behavior during police interrogation was equally abnormal, in that he claimed Taft wanted him to choke her to death so that she "could be with her mother" and that he believed his confession meant the State's Attorney would let him "walk free." Schultz was also hospitalized for mental health reasons, but apparently unlike Kegley, Schultz was medicated for his problems. Also unlike Kegley, Schultz complained of hallucinations during pre-trial detention, has a family history of depression and suicide, and was abused and neglected as a child. Accordingly, we conclude that the facts of Schultz's case resonate enough with those in *Kegley* that even Illinois' precedent demonstrates the need for appointing a psychiatrist to examine Schultz's sanity at the time of the crime.

## CONCLUSION

We hold that the Illinois appellate court's rejection of Schultz's *Ake* claim was both contrary to and an unreasonable application of clearly established United States Supreme Court precedent requiring the appointment of a psychiatrist; Schultz showed that his sanity at the time of the crime would be a significant factor at trial. Accordingly, we AFFIRM the decision of the district court to grant the writ of habeas corpus.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—12-19-02