2024 IL App (1st) 220415-U

No. 1-22-0415

Order filed January 11, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 16 CR 10948 |
| | ) | 16 CR 10949 |
| ZAKIYYAH SEIFULLAH, | ) | |
| | ) | Honorable |
| | ) | Geraldine A. D'Souza, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio III concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's ruling denying defendant's amended motion to withdraw her negotiated guilty plea is affirmed where defendant failed to present credible evidence to establish (1) doubt of her guilt and (2) that the ends of justice would be better served by conducting a trial.

¶ 2   Defendant Zakiyyah Seifullah entered a negotiated guilty plea to one count of criminal sexual abuse in exchange for two years' probation and a 10-year sex offender registration requirement. Seifullah then filed a motion to withdraw her plea, which the trial court denied. On

appeal, this court entered an agreed order that vacated the trial court's order and remanded the cause to the trial court. *People v. Seifullah*, No. 1-19-1946 (Jan. 22, 2021) (dispositional order). On remand, Seifullah filed an amended motion to withdraw her guilty plea, which the trial court again denied. In this appeal, Seifullah argues that the trial court abused its discretion by denying her amended motion to withdraw her guilty plea where she presented evidence establishing (1) doubt of her guilt and (2) that the ends of justice would be better served by conducting a trial. We affirm.[1]

¶ 3                                     I. BACKGROUND

¶ 4     Seifullah was charged by indictment with four counts of aggravated criminal sexual abuse against J.R., her stepson, in case 16 CR 10948. Seifullah was further indicted for criminal sexual assault (counts I-IV) and aggravated criminal sexual abuse (counts V-VI) against J.R. in case 16 CR 10949. The trial court granted Seifullah's motion to join the cases.

¶ 5     On April 22, 2019, the State advised the court that the parties were "negotiating" and that Seifullah had been evaluated for sex offender probation but had failed to provide an "acceptable address" and "refused to participate." Defense counsel confirmed that Seifullah "reject[ed] the offer." The State explained that the offer required Seifullah to plead guilty to one count of criminal sexual abuse in exchange for two years of sex offender probation and a 10-year sex offender registration requirement. The court admonished Seifullah of the charges and the sentencing range, which it described as a mandatory minimum of 19 years to a maximum of 67 years in prison with lifetime registration as a sex offender. The court also explained the plea and sentence offered by the State. Seifullah confirmed that she consulted with counsel and rejected the offer.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6      On August 5, 2019, the day of trial, the State advised the court that the parties had reached a plea agreement. In case number 16 CR 10949, the State would amend one count of aggravated criminal sexual abuse to allege criminal sexual abuse, specifically that Seifullah knowingly "touched her hand to J.R.'s penis for the purpose of sexual arousal or gratification by the use of force or threat of force."[2] In exchange, Seifullah would plead guilty to the amended count, receive two years of "regular probation" and a 10-year sex offender registration requirement, and undergo a psychosocial evaluation, DNA indexing, and testing for sexually transmitted diseases. The State would then nol-pros the remaining counts in case numbers 16 CR 10948 and 16 CR 10949.

¶ 7      The trial court advised Seifullah of the amended charge, that she was presumed innocent of all charges, and that she could plead guilty or proceed to trial. Seifullah stated that she would plead guilty. In response to further questioning, Seifullah asserted that she understood the nature of jury and bench trials, and that during a trial, she could cross-examine witnesses, present evidence, testify regarding her own "version of the event," or remain silent.

¶ 8      The court informed Seifullah that on the amended count, a Class 4 felony, she could be sentenced to 30 months' probation or one to three years in prison with one year mandatory supervised release, would be required to register as a sex offender for 10 years, and could be subject to a fine and restrictions on where she may live or work. Seifullah stated that she understood, confirmed that no one threatened her or promised her anything, and asserted that she was pleading guilty of her own free will.

---

[2] The State told the trial court that the amended count alleged a violation of section 11-1.50(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-1.50(a)(2) (West 2018)). The sentencing order, however, reflects that defendant was sentenced under section 11-1.50(a)(1) of the Code (720 ILCS 5/11-1.50(a)(1) (West 2018)), which describes the conduct alleged in the amended count and in the stipulated factual basis for the plea. See *id.* (criminal sexual abuse includes "an act of sexual conduct by the use of force or threat of force").

¶ 9    The parties stipulated to the factual basis for the plea. According to the State, evidence would establish that Seifullah knowingly committed the act of sexual conduct upon J.R., then 17 years old, when Seifullah touched her hand to J.R.'s penis for the purpose of sexual arousal or gratification of the victim by the use of force or threat of force. Lovell R., J.R.'s father, would testify that he observed Seifullah and J.R. engage in "sexual conduct" between May 16 and 17, 2016.

¶ 10    The court accepted the factual basis, found that Seifullah understood the charges and penalties, and determined that she was pleading guilty freely and voluntarily. The court therefore found Seifullah guilty of criminal sexual abuse.

¶ 11    The case proceeded to sentencing. In allocution, Seifullah stated that she was "fully aware" and "accepting" that she had pleaded guilty, but she believed the "judicial system is flawed" and "unfair." Seifullah felt that she "had" to plead guilty because the court explained that she could "go home or possibly spend 19 years in prison." Seifullah added that she "didn't do it," but had to do what was best for her children.

¶ 12    The court again admonished Seifullah that she was not required to plead guilty and could proceed to trial. Seifullah responded that she understood, but the difference between probation and 19 years in prison was "too great." The court inquired whether Seifullah was satisfied with her attorney's advice; she answered affirmatively and again confirmed that she wanted to plead guilty. The court sentenced Seifullah to two years' probation, requiring that she undergo a psychosocial evaluation, complete any recommendations, submit to DNA testing and testing for sexually transmitted diseases, and register as a sex offender for 10 years.

¶ 13    On August 14, 2019, nine days after her plea, Seifullah, through counsel, filed a motion to withdraw her guilty plea, arguing that she was innocent, doubt existed as to her guilt, and the ends

of justice would be better served by allowing her to withdraw the plea and proceed to trial. Defense counsel did not file a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 14    On September 17, 2019, the trial court denied Seifullah's motion after a hearing. The court noted that Seifullah did not allege a misapprehension of fact or law, and she had failed to establish doubt of her guilt or a meritorious defense; rather, the court had found a factual basis for the guilty plea at the plea hearing. The court further explained that justice would not be served by submitting the case to a jury as J.R., a "young adult," had arrived at court on the date of the plea hearing prepared to testify against Seifullah, his stepmother, whom the court was "sure he had strong feelings for."

¶ 15    Seifullah then addressed the court, stating that she had wanted to go to trial, but her attorney "begged" her to accept the plea bargain. According to Seifullah, her "back was in a corner" and she did not know what else to do. The court responded that Seifullah had been adequately admonished during the plea hearing, including about the lengthy prison term she avoided by pleading guilty in exchange for probation, which was "absolutely [her] decision."

¶ 16    Seifullah appealed. On January 22, 2021, this court entered an agreed order vacating the trial court's order denying Seifullah's motion to withdraw her guilty plea. The case was remanded for further postplea proceedings, including allowing Seifullah to file a new postplea motion and for postplea counsel to file a certificate in strict compliance with Rule 604(d). *Seifullah*, No. 1-19-1946 (Jan. 22, 2021) (dispositional order).

¶ 17    On remand, through new counsel, Seifullah filed an amended motion to withdraw her guilty plea, along with new counsel's Rule 604(d) certificate. In the amended motion, Seifullah argued that she was innocent, doubt of her guilt existed, and the ends of justice would be better served by proceeding to trial. Seifullah attached, *inter alia*, reports from the Matteson and Chicago police

departments, her affidavit, DNA test results from samples on J.R.'s bedding, a letter from a polygraph examiner, and a letter from a clinical therapist.

¶ 18    A Matteson police department report from May 22, 2016 indicated that officers responded to a domestic violence incident at the residence of Seifullah, J.R., and J.R.'s father, Lovell R., who reported that he "caught" Seifullah kissing J.R.'s neck in the living room on May 21, 2016. Lovell R. and Seifullah then engaged in two physical altercations, with Seifullah scratching Lovell R.'s face and "bust[ing]" his lip. Seifullah denied any physical contact with J.R. and claimed that Lovell R. struck her left arm, leaving a bruise, and later choked her. J.R. told an officer that he was "just talking" with Seifullah and that no physical contact ever happened between the two of them. In a second report, Lovell R. added that he once confronted Seifullah about infidelity and she said, "I'm not sleeping with anyone except your son."

¶ 19    A third report from May 22, 2016, stated that Lovell R. and J.R. went to the Matteson police station and, with Lovell R.'s consent, J.R. spoke alone with a detective. J.R. stated that on May 16, 2016, Seifullah entered his room, closed the door, and engaged in sexual intercourse and other sex acts with him. On May 17, 2016, Seifullah told J.R., "I need that again." They went to his room and again engaged in sexual intercourse. On the night of May 21, 2016, while J.R. was in the living room, Seifullah sat beside him and kissed his neck. Lovell R. entered the room, said, "I saw you," and asked J.R. whether Seifullah was kissing his neck; J.R. responded, "nah, but she was about to." The next day, J.R. told Lovell R. that he had sex with Seifullah.

¶ 20    According to a fourth report, J.R. told officers that he also had sexual intercourse with Seifullah on two occasions in August 2015, when he was 16 years old. In a fifth report, Syreeta P.E., J.R.'s biological mother, told police that J.R. had told her about a sexual encounter with

Seifullah that occurred in July or August 2015. Syreeta P.E. noticed J.R. became withdrawn around that time.

¶ 21     A sixth report documented Seifullah's statements to police after she was arrested and advised of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). According to Seifullah, Lovell R. was " 'suspicious of everything' " and they would "argue and fight all the time." On May 21, 2016, Lovell R. falsely accused Seifullah of kissing J.R. Seifullah and Lovell R. engaged in a physical confrontation, but later had sex and went to sleep. They resumed fighting the next morning, and Lovell R. called the police. Seifullah asserted that she did not know why J.R. would accuse her unless Lovell R. told him to. Following these events, Seifullah went to a hospital for mental health treatment.

¶ 22     In her affidavit, Seifullah averred that she had frequent access to J.R.'s room, clothes, and laundry when she lived with J.R. and Lovell R. Seifullah denied sexual contact with J.R. and asserted that Lovell R. was lying when he claimed to have seen her kissing J.R. on the couch on May 21, 2016. Instead, Seifullah leaned over so that she could talk to J.R. outside Lovell R.'s presence regarding a party that J.R. attended. That night, Lovell R. hit Seifullah and accused her of being sexually interested in J.R. Afterwards, Lovell R. and Seifullah had sex. The next morning, they argued again, and Lovell R. choked Seifullah. Police arrived, and Seifullah and J.R. told them that Lovell R.'s claims were false. According to Seifullah, Lovell R.'s anger and jealousy led him to pressure J.R. to make these false allegations.

¶ 23     Seifullah further averred that on the date of trial, she panicked because trial counsel "begg[ed]" her to plead guilty since she "was facing so much time in prison." According to Seifullah, "[a]s a mother, it was an insurmountable choice." She acknowledged that she had completed probation and that vacating her plea would return her to "square one," but after having

consulted with her attorney about the risks of such a decision, she nevertheless wanted to proceed to trial and testify.

¶ 24　The DNA test results showed that sperm samples from J.R.'s bedding had a mixture of human DNA from at least two people. Non-sperm samples matched at least three individuals, one being Seifullah.

¶ 25　In a letter, a polygraph examiner stated that Seifullah underwent a sexual history polygraph examination on July 29, 2020. According to the examiner, Seifullah denied having any sexual contact with any minor since she was 18 years old. Seifullah also denied having physical sexual contact with a male minor since she was 18 years old. The examiner opined that Seifullah exhibited no significant emotional disturbances indicative of deception and told the truth to all the relevant test questions.

¶ 26　In a letter dated August 10, 2020, a clinical therapist stated that Seifullah had failed a polygraph examination on May 4, 2020, but Seifullah advised that she was emotionally upset when she heard the victim's name because she had been wrongfully accused by him. Seifullah passed the subsequent polygraph examination on July 29, 2020, however, and remained steadfast in asserting she had been wrongfully accused. As the therapy agency could not treat clients "who say they do not require sex offender specific therapy," the therapist recommended that Seifullah not participate in sex offender treatment.

¶ 27　The State filed a response arguing that Seifullah intelligently and voluntarily accepted the guilty plea. According to the State, Seifullah's affidavit was self-serving, the court should only consider evidence existing at the time of the plea, and in any event, the police reports, lab reports, and polygraph results that Seifullah appended to her amended motion comprised hearsay inadmissible at trial.

¶ 28    On February 25, 2022, the court conducted a hearing on Seifullah's amended motion to withdraw her guilty plea. Following argument, Seifullah told the court that she pleaded guilty because she "wanted to be home" for her children, but she immediately regretted her plea because "it wasn't true."

¶ 29    The court denied Seifullah's amended motion to withdraw her guilty plea. The court observed that Seifullah would have been subject to a prison term of 19 to 67 years plus lifetime registration as a sex offender were she found guilty following a trial, but instead pleaded guilty and received two years' probation and a 10-year sex offender registration requirement. The court noted that Seifullah persisted in her innocence during the plea hearing, but that "an *Alford* plea is allowed so long as the record establishes a strong factual basis from which a jury could find the [d]efendant guilty of the offense."[3] Here, according to the court, Seifullah was properly admonished about the presumption of innocence and her right to trial, a strong factual basis was presented at the plea hearing, and no mistake of fact or law occurred. Further, the court stated that Seifullah had well thought out reasons for pleading guilty, including the opportunity to go home to her children and "not serve any time."

¶ 30    The court explained that it considered all the evidence, including the documents attached to Seifullah's amended motion, and found no doubt as to her guilt. While J.R. initially denied the sexual encounters, he later described them to law enforcement and told his biological mother, who noticed him exhibit unusual behavior. Furthermore, according to Lovell R., Seifullah stated that she had sex with J.R., and Lovell R. saw Seifullah kiss J.R.'s neck.

---

[3]See *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (an *Alford* plea is a guilty plea where the defendant maintains innocence).

¶ 31    The court noted that the DNA test results were not dispositive, but still relevant. Further, although Seifullah passed her second polygraph examination, the first polygraph examination reflected her "significant emotional disturbances when asked questions regarding the sex acts with the victim." Consequently, the court found no doubt as to Seifullah's guilt. In so holding, the court acknowledged that Seifullah remained steadfast in denying her guilt but pleaded guilty and avoided trial with well thought out reasons. The court added that J.R. "may at this point feel that he put this behind him in these last two years," and the interests of justice would not be served by requiring him to return to court and testify.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, Seifullah contends that the trial court abused its discretion when it denied her amended motion to withdraw her guilty plea, as she always maintained her innocence and the documents appended to her amended motion establish doubt as to her guilt.

¶ 34    As our supreme court has explained, "a plea of guilty is a grave act that is not reversible at the defendant's whim" or because the defendant is "dissatisfied with the deal." *People v. Reed*, 2020 IL 124940, ¶ 47. "[L]eave to withdraw a plea of guilty is not granted as a matter of right, but as required to correct a manifest injustice." *People v. Evans*, 174 Ill. 2d 320, 326 (1996). The defendant bears the burden of establishing that withdrawing a guilty plea is needed "to correct a manifest injustice under the facts involved." *People v. Lee*, 2023 IL App (1st) 211080, ¶ 22. The guilty plea will not be disturbed unless it resulted from "a misapprehension of the facts or law or where there is doubt as to the guilt of the accused and justice would be better served by conducting a trial." *People v. Burge*, 2021 IL 125642, ¶ 37.

¶ 35    Whether to grant or deny a motion to withdraw a guilty plea is in the sound discretion of the trial court and, therefore, is reviewed for abuse of discretion. *People v. Hughes*, 2012 IL

112817, ¶ 32. Abuse of discretion will only be found "where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Burge*, 2021 IL 125642, ¶ 37.

¶ 36    Viewing the record as a whole, we find the trial court did not abuse its discretion in denying Seifullah's amended motion to withdraw her guilty plea. Although Seifullah maintained her innocence throughout the proceedings, in her statements to the court and in the affidavit attached to her amended motion, she also represented that she pleaded guilty to secure probation and avoid a significant prison sentence. It is well-established that the system of plea bargaining "encourages defendants to engage in a cost-benefit assessment where, after evaluating the State's evidence of guilt compared to the evidence available for [their] defense, a defendant may choose to plead guilty" in exchange for "a more lenient punishment than that imposed upon a defendant who disputes the overwhelming evidence of guilt at trial." *Reed*, 2020 IL 124940, ¶ 33. Moreover, a defendant may plead guilty despite asserting innocence so long as an adequate factual basis exists, and the defendant has been adequately admonished. *Id.* ¶ 34.

¶ 37    Here, Seifullah does not contend that she pleaded guilty due to a mistake of fact or law. The record establishes, in fact, that the trial court ascertained Seifullah understood the charges, the possible penalties, the rights she relinquished by pleading guilty, and determined that her plea was given freely and voluntarily. The parties also stipulated to an adequate factual basis for the plea. Given these circumstances, the court did not abuse its discretion in finding that Seifullah's assertions of innocence failed to establish doubt of her guilt.

¶ 38    As for the DNA test results that Seifullah appended to her amended motion to withdraw her guilty plea, such evidence is unnecessary to prove that a sex offense occurred. See *People v. Nevilles*, 2021 IL App (1st) 191388, ¶ 65. That said, the results did not disprove that Seifullah

committed criminal sexual abuse. According to the test, sperm samples from J.R.'s bedding had a mixture of human DNA from "at least two people." Non-sperm samples matched at least three individuals, one being Seifullah. As the test results did not foreclose the possibility that Seifullah engaged in sexual conduct with J.R., the trial court did not err in concluding this evidence also failed to support doubt of Seifullah's guilt.

¶ 39    To the extent Seifullah relies on statements in the police reports, the letter from the polygraph examiner, and the letter from the therapist, we observe, at the outset, that these statements generally would be inadmissible at trial for the truth of the matters asserted. *People v. Peterson*, 2017 IL 120331, ¶ 17. The introduction of the actual polygraph results would also be improper. See *People v. Gard*, 158 Ill. 2d 191, 201 (1994).

¶ 40    Notwithstanding, we cannot say the trial court erred in concluding that the content of these documents did not support Seifullah's request to withdraw her guilty plea. The letters present the opinions of professionals who lack firsthand knowledge of the facts underlying the stipulated basis for Seifullah's guilty plea or the basis for her assertion of innocence. The police reports, for their part, extensively detail the conduct underlying the offense. In particular, the reports describe how J.R. initially denied the offense but later advised Lovell R. and the police about the sexual incidents with Seifullah, which J.R. described in great detail. The reports also describe how Lovell R. witnessed physical contact between Seifullah and J.R. While the reports further detail Seifullah's assertion of innocence and her claim that J.R. and Lovell R. falsely accused her, the trial court was tasked with determining how the contradictory statements affected Seifullah's basis for withdrawing her guilty plea, and we do not find that the trial court abused its discretion. *Burge*, 2021 IL 125642, ¶ 37 (an abuse of discretion will only be found "where the court's ruling is

arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court" (internal quotation marks omitted)).

¶ 41    Seifullah further argues that the trial court improperly considered J.R.'s status as a victim in determining whether justice would be served by allowing Seifullah to withdraw her guilty plea, and that the trial court overlooked her second polygraph examination and the contradictory statements in the police reports.

¶ 42    Viewing the record as a whole, however, we cannot say that these purported errors amounted to an abuse of discretion. As noted, whether to permit a plea of guilty to be withdrawn is within the sound discretion of the trial court. *People v. Johnson*, 154 Ill. 2d 356, 361 (1993); see also *Burge*, 2021 IL 125642, ¶ 37.

¶ 43    Here, the court received the stipulated factual basis for Seifullah's guilty plea and, later, Seifullah's amended motion to withdraw her guilty plea and attached exhibits. The court was charged with weighing this evidence—which included significant corroboration for the factual basis for the plea—against Seifullah's assertions of innocence. The court, in its sound discretion, determined there was no doubt of Seifullah's guilt. See, *e.g.*, *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 43 ("For hearings on motions to withdraw guilty pleas, as with most criminal proceedings, the determination of witness credibility rests with the trier of fact."); see also *Johnson*, 154 Ill. 2d at 362 (affirming denial of defendant's motion to withdraw his guilty plea where "nothing in the record" supported the defendant's claim that he pleaded guilty due to harassment "except defendant's self-serving testimony"). The court extensively detailed its reasons for denying the amended motion, and, while Seifullah disagrees with the court's reasoning, we cannot say that an abuse of discretion occurred. *Hughes*, 2012 IL 112817, ¶ 32.

¶ 44                                    III. CONCLUSION

¶ 45    The judgment of the circuit court of Cook County is affirmed.

¶ 46    Affirmed.