**Floyd RICHARDSON, Petitioner,**

v.

**Terry McCANN, Warden, Stateville Correctional Center, Respondent.[1]**

**Case No. 00 C 6425.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 4, 2008.

---

1. Terry McCann, the warden of Stateville Correctional Center, is substituted as the respondent. *See* Fed.R.Civ.P. 25(d)(1).

Joshua Sachs, Office of the State Appellate Defender, Chicago, IL, for Petitioner.

Jay Paul Hoffmann, Chief of Criminal Appeals, Eric W. Truett, Karl R. Triebel, Illinois Attorney General's Office, Peter Fischer, Sally Louise Dilgart, Chicago, IL, for Respondent.

MATTHEW F. KENNELLY, District Judge.

In May 1982, Floyd Richardson was charged with the April 1, 1980 armed robbery and murder of George Vrabel, a sales clerk at Twin Food and Liquors on the south side of Chicago. A jury convicted Richardson, and the trial judge sentenced him to death in 1984, after Richardson waived his right to a jury at the penalty

phase of his trial. On January 11, 2003, Illinois' governor commuted Richardson's death sentence to a sentence of life without the possibility of parole.

Richardson's petition for a writ of habeas corpus has been before the Court once before. The Court granted Richardson's petition on February 9, 2004. On appeal, the Seventh Circuit Court of Appeals reversed, vacated the writ, and later remanded to this Court for consideration of the remaining issues in Richardson's petition. *See Richardson v. Briley,* 401 F.3d 794 (7th Cir.2005); Order of Aug. 8, 2006.

Four claims remain for this Court's consideration. First, Richardson alleges he was denied due process of law because his conviction was based on identification testimony that he says was produced by suggestive procedures. Second, Richardson contends that the prosecution systematically struck prospective African–American jurors in violation of his right to equal protection of the law. Third, he alleges that the prosecution's introduction of evidence about two crimes that were not the subject of the charges violated his right to due process of law. Finally, Richardson contends that he was denied effective assistance of trial counsel at the penalty phase of his trial.

In this decision, the Court addresses Richardson's claim regarding the striking of prospective African–American jurors, specifically, whether it is appropriate to conduct an evidentiary hearing regarding that claim.

## Background

### 1. Richardson's direct appeal

At trial, Richardson was represented by the Cook County Public Defender's office. That same office represented Richardson on his appeal, which went directly to the Illinois Supreme Court because Richardson had been sentenced to death. That court affirmed Richardson's conviction and sentence in 1988. *People v. Richardson,* 123 Ill.2d 322, 123 Ill.Dec. 908, 528 N.E.2d 612 (1988). The court addressed the following issues: 1) the admission of other-crimes evidence and the propriety of the trial court's limiting instruction on that point, *see id.* at 338–44, 123 Ill.Dec. 908, 528 N.E.2d at 617–19; 2) the sufficiency of the limiting instruction the trial court gave regarding the other-crimes evidence, *see id.* at 344–46, 123 Ill.Dec. 908, 528 N.E.2d at 619–20; 3) the trial court's limitation of defense counsel's examination of police officers at the hearing on Richardson's motion to suppress identification evidence, *see id.* at 346–48, 123 Ill.Dec. 908, 528 N.E.2d at 620–21; 4) the admission of evidence regarding photographic and lineup identifications, *see id.* at 348–52, 123 Ill.Dec. 908, 528 N.E.2d at 621–23; 5) the denial of counsel at the lineup identification, *see id.* at 352–53, 123 Ill.Dec. 908, 528 N.E.2d at 623; 6) the sufficiency of the evidence of guilt, *see id.* at 353–54, 123 Ill.Dec. 908, 528 N.E.2d at 623–24; 7) improper closing argument by the prosecution, *see id.* at 354–56, 123 Ill.Dec. 908, 528 N.E.2d at 624–25; and 8) various issues regarding the death penalty sentencing phase of the trial, *see id.* at 356–64, 123 Ill.Dec. 908, 528 N.E.2d at 625–29. After the Illinois Supreme Court affirmed the conviction and sentence, Richardson petitioned the United States Supreme Court for a writ of certiorari. That Court denied the petition in March 1989. *Richardson v. Illinois,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

While Richardson's case was pending on direct appeal to the Illinois Supreme Court, the United States Supreme Court decided *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which it held that the race-based exclusion of African–American potential jurors

through the use of peremptory challenges violates the Equal Protection Clause of the United States Constitution. *Id.* at 86, 106 S.Ct. 1712. Prior to the Supreme Court's decision in *Batson, Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), controlled whether the prosecution had violated the Equal Protection Clause of the Fourteenth Amendment by using peremptory challenges to exclude African–American prospective jurors. Under *Swain,* a defendant was required to make a difficult evidentiary showing to prove discrimination: he had to show that the prosecution's conduct was part of an overall pattern of discrimination aimed at excluding African–Americans from jury service in case after case. *See Batson,* 476 U.S. at 84, 106 S.Ct. 1712.

*Batson* overruled *Swain* in this regard. *Id.* at 100 n. 25, 106 S.Ct. 1712. In *Batson,* the Supreme Court held that "[t]he standard we adopt under the Federal Constitution is designed to ensure that a State does not use peremptory challenges to strike any black juror because of his race." *Id.* at 99 n. 22, 106 S.Ct. 1712. "[T]he exclusion of even a single prospective juror based on race violates the defendant's constitutional rights." *Coulter v. McCann,* 484 F.3d 459, 464 (7th Cir.2007) (citing *Splunge v. Clark,* 960 F.2d 705, 708 (7th Cir.1992)).

Shortly after deciding *Batson,* and while Richardson's case was pending before the Illinois Supreme Court, the United States Supreme Court decided *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), in which it held that *Batson* applies "retroactively to all cases, state or federal, pending on direct review or not yet final" at the time of the *Batson* decision. *Id.* at 328, 107 S.Ct. 708. Because Richardson's direct appeal was pending when *Batson* was decided, *Batson* applies to his case. Despite this, Richardson's appellate counsel did not attempt to

assert a *Batson* claim before the Illinois Supreme Court, nor did appellate counsel argue that trial counsel was ineffective in failing to assert a *Batson*-type claim at trial.

### 2. Richardson's post-conviction petition and appeal

In January 1991, Richardson filed a petition for relief in the Circuit Court of Cook County under the Illinois Post–Conviction Hearing Act, 725 ILCS 5/122–1(a)(1). In his petition, he argued that his trial counsel were ineffective because, among other reasons, they did not object to the dismissal of prospective jurors who were African–American, did not call a key eyewitness, Myron Moses, to testify, and did not present significant mitigation evidence at the sentencing hearing. Richardson also argued that his appellate counsel was ineffective for, among other things, failing to raise the *Batson* issue on appeal. Finally, he argued that the prosecution had violated *Batson* by removing jurors on the basis of race.

On March 4, 1997, a state trial court judge granted the state's motion to dismiss Richardson's post-conviction petition without conducting an evidentiary hearing, despite Richardson's supplementation of the record and request for an evidentiary hearing. The Court will discuss the state judge's decision in greater detail later in this ruling.

Richardson appealed to the Illinois Supreme Court. He argued four issues on appeal: 1) the trial court erred in denying an evidentiary hearing on his post-conviction petition; 2) ineffective assistance of trial counsel for failure to investigate and argue mitigating evidence and failing to make a *Batson* objection; 3) the trial court's denial of his request for additional funds for expert witnesses; and 4) the prosecution's violation of *Batson* in exer-

cising its peremptory challenges. *See* Rule 5 Materials, Ex. 7 (post-conviction appeal brief) at 1 (statement of issues).

The Illinois Supreme Court affirmed the lower court's ruling in 2000. *People v. Richardson,* 189 Ill.2d 401, 245 Ill.Dec. 109, 727 N.E.2d 362 (2000). The court did not address the *Batson* issue on the merits; it held that Richardson had forfeited the *Batson* issue by failing to challenge at trial the prosecution's exercise of its peremptory challenges. The court stated:

> However, *Batson* requires "a defendant's *timely* objection to a prosecutor's challenges." (Emphasis added.) *Batson,* 476 U.S. at 99, 106 S.Ct. at 1725, 90 L.Ed.2d at 89–90. A defendant who fails to raise a *Batson* objection before the jury is sworn waives the issue. *People v. Fair,* 159 Ill.2d 51, 71, 201 Ill.Dec. 23, 636 N.E.2d 455 (1994). This rule applied under the old rule of *Swain* (*e.g., People v. Gaines,* 88 Ill.2d 342, 359, 58 Ill.Dec. 795, 430 N.E.2d 1046 (1981)) and applies to cases pending on appeal when *Batson* was decided (*e.g., People v. Evans,* 125 Ill.2d 50, 61–62, 125 Ill.Dec. 790, 530 N.E.2d 1360 (1988); *accord People v. Holder,* 153 Ill.App.3d 884, 886, 106 Ill.Dec. 700, 506 N.E.2d 407 (1987)). Thus, a defendant who failed to object to the prosecution's use of peremptory challenges under the old rule of *Swain* cannot receive on appeal the benefit of the new rule announced in *Batson. People v. Pecor,* 153 Ill.2d 109, 125–26, 180 Ill.Dec. 50, 606 N.E.2d 1127 (1992); *accord Teague v. Lane,* 489 U.S. 288, 297, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334, 347 (1989) (under Illinois law, failure to raise *Swain* claim at trial and on direct review waives *Batson*-type claim in state post-conviction proceeding).

In this case, defendant concedes, as our review of the record confirms, that his trial counsel did not object during voir dire to the prosecution's use of its peremptory challenges or include this issue in the post-trial motion. We note that while defendant's direct appeal was being briefed, this court remanded several pending cases to trial courts for *Batson* hearings, where the *Batson* issue was timely raised at trial. *People v. Hooper,* 118 Ill.2d 244, 249, 107 Ill.Dec. 250, 506 N.E.2d 1305 (1987) (Ryan, J., concurring) (describing court as remanding "all cases on review in which the *Batson* issue is viable" to circuit courts for *Batson* hearings); *see, e.g., Evans,* 125 Ill.2d at 59–60, 125 Ill.Dec. 790, 530 N.E.2d 1360. Defendant has waived this claim. *Richardson,* 189 Ill.2d at 408–10, 245 Ill. Dec. 109, 727 N.E.2d at 368–69.

As indicated earlier, Richardson argued on appeal that trial counsel had rendered constitutionally ineffective assistance by failing to object to the prosecution's use of its peremptory challenges. *See* Rule 5 Materials, Ex. 7 at 11, 36, 38 & 41. The court found, however, that Richardson's trial counsel was not ineffective for "failing to make an essentially futile *Swain* claim." *Richardson,* 189 Ill.2d at 412, 245 Ill.Dec. 109, 727 N.E.2d at 369. Richardson also contended in his post-conviction appeal that the attorney who handled his direct appeal had rendered constitutionally ineffective assistance by failing to argue the *Batson* issue on appeal. *See* Rule 5 Materials, Ex. 7 at 35, 36, 37, 38, 39 & 41. On that issue, the Illinois Supreme Court stated that because "trial counsel failed to preserve this issue for review .... [a]prelate counsel is not constitutionally deficient for not arguing a waived issue." *Richardson,* 189 Ill.2d at 412, 245 Ill.Dec. 109, 727 N.E.2d at 370.

The United States Supreme Court again denied certiorari. *Richardson v. Illinois,*

531 U.S. 871, 121 S.Ct. 170, 148 L.Ed.2d 116 (2000).

## Discussion

Richardson has asked the Court to hold an evidentiary hearing on his *Batson* claim. The state opposes his request. It first contends that the Court may not hold an evidentiary hearing because Richardson procedurally defaulted the *Batson* claim. Second, the state contends that the Court may not hold an evidentiary hearing because Richardson was not diligent in developing the factual basis of his *Batson* claim in state court proceedings. Third, the state argues that if the Court reaches the merits of Richardson's *Batson* claim, it must defer to the post-conviction trial court's finding that Richardson failed to make a *prima facie* case of racial discrimination under *Batson*. Finally, the state argues that if any hearing on the *Batson* claim is held, the Court should remand the case to state court to conduct the hearing.

## 1. Procedural Default

Richardson did not object at trial to the prosecution's use of its peremptory challenges, nor did he raise any such objection on his direct appeal. In his state post-conviction petition, however, Richardson (who is African–American) argued that the prosecution used its peremptory challenges in a racially discriminatory manner against the African–American members of the jury venire. As noted earlier, he also claimed that his trial and appellate counsel rendered constitutionally ineffective assistance in failing to assert a *Batson* claim.

The materials Richardson filed in his post-conviction case established that thirteen of the sixteen jurors the prosecution struck were African–American. He was unable to obtain evidence identifying the race of the other three, though his counsel argued that available information suggested they might be African–American as well. *See* Feb. 4, 1997 Tr. at 141–42. Richardson also specifically requested an evidentiary hearing, at which this and other issues could have been addressed.

The state trial court judge refused to hold an evidentiary hearing on Richardson's claims. The judge concluded that Richardson's *Batson* claim and his claim of ineffective assistance of trial counsel based on the failure to challenge the prosecution's peremptory strikes were "waived" because Richardson had not raised them on direct appeal. The judge nonetheless evaluated both claims on their merits. He ruled that it was not ineffective assistance for trial counsel not to raise a claim based on a legal rule that did not exist at the time of trial. With regard to the *Batson* claim, the judge started by noting that the parties' pleadings were "unclear" and Richardson had not made a *Batson* record at trial. Rather than hold a hearing, however, the judge said he would construe ambiguities in the record against Richardson. The judge briefly listed the race (where known) and certain other information regarding the sixteen jurors the prosecution struck and said he would not consider the strikes of the three jurors whose race was unknown, but only that of the "remaining nine [sic] venirepersons" (an obvious error, as there were thirteen others). The judge stated that he could not determine whether there had been "a pattern of strikes against African–American venirepersons"—despite the fact that all thirteen of the prosecution's strikes against persons whose race was known were against African–Americans—because the race of the unchallenged jurors was unknown. The judge then looked at whether there was "disproportionate use" of peremptory challenges against African–Americans, stating that "at least" 81 percent of the prosecution's strikes had been used against African–Americans, but none-

theless assessing this as a "neutral" factor because three of the fourteen jurors and alternates who were selected were African–American. The judge said that the level of African–American representation in the venire was a neutral factor because it was unknown.

The judge then considered whether the excluded jurors shared any characteristics other than race and concluded that they did: none had been the victim of a crime (though the judge later noted that two had family members who had been killed). The judge identified nine excluded African–American jurors who allegedly had "significant dissimilar characteristics" from the other jurors. He also noted that the prosecution had accepted some African–American jurors. The judge stated that although the victim was of a different race from Richardson, because the race of the witnesses was unknown, this was not a significant factor. The judge also stated that because three of the fourteen jurors and alternates were African–American, a proportion similar that in Cook County, no inference of discrimination was warranted. Finally, the judge noted that the prosecution had not used all of its peremptory challenges and thus had not struck every African–American juror. For these reasons, the judge concluded that Richardson had failed to establish a *prima facie* case of discrimination.

As noted earlier, on Richardson's post-conviction appeal, the Illinois Supreme Court held that Richardson's failure make a *Swain* objection at trial regarding the prosecution's use of its peremptory challenges prevented him from receiving on his direct appeal the benefit of the new rule announced in *Batson. People v. Richardson,* 189 Ill.2d at 409–10, 245 Ill.Dec. 109, 727 N.E.2d at 368. As a result, the court held that the *Batson* claim was forfeited, and it did not address the claim on its merits. With regard to Richardson's *Batson*-related ineffective assistance claims, the court stated that Richardson's trial counsel were not ineffective for failing to object to the prosecution's use of its peremptory challenges because, under *Swain,* a *Batson*-type claim would have been futile. The court went on to rule that appellate counsel was not ineffective for failing to argue the *Batson* point on appeal, because "[a]ppellate counsel is not constitutionally deficient for failing to argue a waived issue." *Id.* at 412, 245 Ill.Dec. 109, 727 N.E.2d at 370.

### a. Independent and adequate state law ground

A federal court considering a habeas corpus petition may not review a petitioner's claim if the state court's disposition of the claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). That ground may be a procedural one: "failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir.1996) (citing *Coleman,* 501 U.S. at 729–44, 111 S.Ct. 2546). The last state court to render a judgment in the federal habeas petitioner's case must have " 'clearly and expressly state[d] that its judgment rests on a state procedural bar' " for that judgment to preclude habeas review. *Thomas v. McCaughtry,* 201 F.3d 995, 1000 (7th Cir. 2000) (quoting *Jenkins v. Nelson,* 157 F.3d 485, 491 (7th Cir.1998)). Because the Illinois Supreme Court was the last state court to render a judgment on Richardson's *Batson* claim, the Court must look to that court's ruling to determine whether the claim is procedurally defaulted, notwithstanding the trial court's determina-

tion of the *Batson* claim on its merits. *See Liegakos v. Cooke,* 106 F.3d 1381, 1385 (7th Cir.1997) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

■ The Illinois Supreme Court stated on Richardson's post-conviction appeal that "*Batson* requires 'a defendant's timely objection to a prosecutor's challenges.'" *Richardson,* 189 Ill.2d at 409, 245 Ill.Dec. 109, 727 N.E.2d at 368 (quoting *Batson,* 476 U.S. at 99, 106 S.Ct. 1712). Though the court phrased this as a requirement of *Batson* itself—i.e., a requirement of federal law, not state law—*Batson* actually did not involve a forfeiture issue. Rather, in the quoted passage, the United States Supreme Court simply noted that the defendant in *Batson* had made a timely objection.

The best reading of the decision in Richardson's case, in this Court's view, is that the Illinois Supreme Court was relying upon a state law forfeiture rule, as evidenced by its citation of Illinois cases in support of its conclusion that Richardson could not rely on *Batson* because his trial counsel had not objected at trial to the prosecution's use of its peremptory challenges. *See id.* In this regard, the Illinois Supreme Court stated that a defendant who does not object to the prosecution's exercise of its peremptory challenges "waives" (i.e., forfeits) the right to assert such an objection. This was, the court stated, the pre-*Batson* rule when *Swain* supplied the governing law, and it also applied to cases that were pending on appeal (like Richardson's) when *Batson* was decided. *See id.* at 409–10, 245 Ill.Dec. 109, 727 N.E.2d at 368 (citing *People v. Gaines,* 88 Ill.2d 342, 359, 58 Ill.Dec. 795, 430 N.E.2d 1046 (1981); *People v. Evans,* 125 Ill.2d 50, 61–62, 125 Ill.Dec. 790, 530 N.E.2d 1360 (1988); *People v. Holder,* 153 Ill.App.3d 884, 886, 106 Ill.Dec. 700, 506

N.E.2d 407 (1987)). Each of the cases the court cited addressed the point as a state-law procedural rule, not a federal-law requirement of *Batson* itself. In short, the Illinois Supreme Court based its ruling barring review on the merits of Richardson's *Batson* claim on a state procedural rule—an independent state law ground.

■ The adequacy of a state-law ground to preclude habeas review is a question of federal law. *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002); *Miranda v. Leibach,* 394 F.3d 984, 992 (7th Cir.2005). "A state court's finding of a procedural default is an adequate ground that would preclude federal review only if the procedural rule applied by the state court is 'firmly established and regularly followed.'" *Thomas,* 201 F.3d at 1000 (quoting *James v. Kentucky,* 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)). "Regularly" means in a "consistent and principled" way; if state courts apply a rule "infrequently, unexpectedly, or freakishly," it cannot be an adequate state-law ground that bars federal habeas review. *Id.* Moreover, "the state rule of practice must have been in place, and enforced, 'by the time as of which it is to be applied.'" *Liegakos,* 106 F.3d at 1385 (quoting *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)) (internal quotation marks omitted). If the Illinois procedural rule that a defendant must object to the prosecution's use of peremptory strikes before the jury is sworn to preserve a *Batson* claim was established and regularly followed at the time of Richardson's trial in 1984—that is, "on the date of the act or omission said to work the forfeiture" of his claim, *Liegakos,* 106 F.3d at 1385—then the Illinois Supreme Court's ruling rests on an adequate state-law ground, barring federal review unless the default is excused.

The state's argument, in essence, is that despite *Batson*'s change in the evidentiary showing needed to establish an equal protection violation, it has always been the law that a defendant must object to the prosecution's peremptory challenges in order to attack them on appeal. There is a bit of a logical anomaly in this argument as it pertains to Richardson's case, given the fact that the case was tried with one governing rule in effect and was heard on appeal after that governing rule had been overturned. Indeed, it is anything but clear that the forfeiture rule the state court applied in Richardson's case was "firmly established and regularly followed" at the relevant times. The cases the state cites in its amended answer for the proposition that "Illinois law required a contemporaneous objection," *see* Amended Answer at 20, all postdated both Richardson's trial and his direct appeal. *See also id.* at 22 & n. 9. Other Illinois cases have noted the unfairness of applying a forfeiture rule in this way when a case is tried under one standard governing jury selection and addressed on appeal under a different standard due to an intervening change in the law. *See, e.g., People v. Pecor*, 153 Ill.2d 109, 120–23, 180 Ill.Dec. 50, 606 N.E.2d 1127, 1133–34 (1992); *People v. Andrews*, 132 Ill.2d 451, 139 Ill.Dec. 469, 548 N.E.2d 1025 (1989); *People v. McDonald*, 125 Ill.2d 182, 125 Ill.Dec. 781, 530 N.E.2d 1351 (1988). The state cites no case predating Richardson's in which a procedural default rule like the one used in his case was applied.

On the other hand, the Illinois courts appear to have followed a practice of remanding for further findings relevant to a *Batson* analysis, when the defendant had, at trial, objected to the prosecution's use of its peremptory challenges. *See, e.g., McDonald*, 125 Ill.2d at 188, 195, 125 Ill.Dec. 781, 530 N.E.2d at 1353, 1356–57 (review after remand for *Batson* hearing; reject-

ing state's argument that defendant tried before *Batson* who objected to prosecution's peremptory challenges but was prevented from making a complete record of racial composition of jury venire and selected jury had forfeited a *Batson* challenge). And it has long been the law in Illinois—albeit, perhaps, outside the context of *Swain–Batson* "straddle" cases— that "[r]esponsibility for preserving and presenting a sufficient record of the asserted error necessarily falls on the party who makes the assertion of error." *People v. Smith*, 106 Ill.2d 327, 334–35, 88 Ill.Dec. 42, 478 N.E.2d 357, 361 (1985); *see also, People v. Edwards*, 74 Ill.2d 1, 7, 23 Ill. Dec. 73, 383 N.E.2d 944, 946 (1978).

Though the question is quite close, the Court concludes that the Illinois Supreme Court relied on an independent and adequate state law ground in concluding that Richardson had forfeited his *Batson* claim. The claim has been procedurally defaulted.

#### b. Cause and prejudice

■■ The finding of a procedural default is not the end of the story. A federal court may still consider a defaulted claim in a habeas corpus case if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. To establish the "fundamental miscarriage of justice" exception, the petitioner must show that " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent,' " specifically, "that it is more likely than not that no reasonable juror would have convicted him in the light of [ ] new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639,

91 L.Ed.2d 397 (1986)). Because Richardson does not argue that he meets this exacting standard, the Court examines only whether the default of his *Batson* claim is excused by a showing of cause and prejudice.

■ A federal habeas corpus petitioner may establish cause for a default in either of two ways that are relevant here. First, cause exists when the petitioner shows that "some objective factor external to the defense ... impeded counsel's efforts to comply with the state's procedural rule," *Murray,* 477 U.S. at 488, 106 S.Ct. 2639, for example because the claim had "no reasonable basis in existing law." *Reed v. Ross,* 468 U.S. 1, 15, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (cited in *Murray,* 477 U.S. at 488, 106 S.Ct. 2639). Second, cause exists when the petitioner received constitutionally ineffective assistance of counsel. *Murray,* 477 U.S. at 488–89, 106 S.Ct. 2639. The Court concludes that with regard to his attorneys' failure to preserve his *Batson* claim, Richardson has established the former of these propositions, and even were that not the case, he has made a sufficient showing of the latter proposition to warrant an evidentiary hearing on the issue of ineffective assistance as cause for the procedural default.

### i. Cause: *Batson* claim was not "reasonably available"

■ *Reed v. Ross* holds that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed,* 468 U.S. at 16, 104 S.Ct. 2901. The rationale for this rule is that a lawyer's "failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a

State's procedural bar." *Id.* at 15, 104 S.Ct. 2901. A rule that would, in effect, require a defendant to raise novel issues—including those that are in an "embryonic stage"—"would not promote either the fairness or the efficiency of the state criminal justice system" and "might actually disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition." *Id.* at 15, 16, 104 S.Ct. 2901.

■ Under *Reed,* a constitutional claim is considered to be not "reasonably available" if the Supreme Court decision that establishes it "explicitly overrule[s] one of [that Court's] precedents"; "overturn[s] a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved"; or "disapprove[s] a practice [the Supreme] Court arguably ha[d] sanctioned in prior cases." *Id.* at 17, 104 S.Ct. 2901 (internal quotation marks and citation omitted); *see generally Salberg v. United States,* 969 F.2d 379, 382 (7th Cir.1992).

■ Richardson's *Batson* claim falls within the first subset of constitutional claims that *Reed* expressly states are not "reasonably available." In 1984, when Richardson was tried, *Swain* governed whether a prosecutor's race-based use of peremptory challenges violated a defendant's right to equal protection. Under *Swain,* a criminal defendant could not claim his rights had been violated by a prosecutor's racially discriminatory use of peremptory challenges to exclude African-Americans from the jury in that defendant's trial only. Rather, the defendant could prevail only by showing that a prosecutor in a county was systematically excluding persons from juries for racially motivated reasons "in case after case." *Swain,* 380 U.S. at 223, 85 S.Ct. 824. At

the time of Richardson's 1984 trial, the Illinois Supreme Court had declared *Swain* to be controlling in Illinois and had rejected lower court decisions that presaged *Batson. See, e.g., People v. Williams,* 97 Ill.2d 252, 274–80, 73 Ill.Dec. 360, 454 N.E.2d 220, 230–33 (1983); *People v. Payne,* 99 Ill.2d 135, 138–39, 75 Ill.Dec. 643, 457 N.E.2d 1202, 1203–04 (1983). The *Swain* standard was virtually impossible to meet, *see Batson,* 476 U.S. at 92 n. 17, 106 S.Ct. 1712, and Richardson could not have met it based on the evidence his trial counsel had regarding the jury selection process at his own trial.

*Batson* changed the standard for a defendant to demonstrate an equal protection violation, holding that a defendant could do so based on the prosecutor's use of peremptory challenges at the defendant's own trial. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712. More to the point, *Batson* expressly overruled *Swain* to the extent of any conflict between the two. *Id.* at 100 n. 25, 106 S.Ct. 1712. Because *Reed* unequivocally states that for purposes of a "cause" showing, a constitutional claim is not "reasonably available" if the Supreme Court decision that established it "explicitly overruled" one of the Supreme Court's precedents, *Reed,* 468 U.S. at 17, 104 S.Ct. 2901, Richardson has cause under *Reed* excusing the default of his *Batson* claim.

At least three circuits (not including the Seventh, which has not addressed the point) have held in cases like Richardson's that a trial lawyer's failure to raise a *Batson*-type claim at trials that predated *Batson* was not excused under *Reed,* because the claim was insufficiently novel even before *Batson* overruled *Swain. See Jones v. Butler,* 864 F.2d 348, 363–64 (5th Cir. 1988); *Pitts v. Cook,* 923 F.2d 1568, 1572–73 (11th Cir.1991); *Ruff v. Armontrout,* 77 F.3d 265, 267 (8th Cir.1996). The Court respectfully disagrees with each of those

courts; their decisions either overlook *Reed,* disregard its clear language, or misapply later Supreme Court decisions.

The court in *Jones* said that at the time of the petitioner's trial, which was held several years prior to *Batson,* a *Batson*-type claim "was familiar and had been asserted in other cases." *Jones,* 864 F.2d at 364. It said that *Swain* had "laid the basis" for a *Batson*-type claim and that this, combined with "[t]he prevalence of [*Batson*-type] objections suggests that Jones had the tools to construct his constitutional claim." Quoting a 1982 Supreme Court decision, the court stated that because " 'the basis of a constitutional claim [was] available, and other defense counsel [had] perceived and litigated that claim,' " there was no cause for the default. *Id.* (quoting *Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). The court in *Jones,* however, did not even cite *Reed,* let alone deal with the Supreme Court's unambiguous statement that a constitutional claim is not reasonably available—thus giving rise to cause for a default—if the Supreme Court decision establishing it explicitly overruled a prior Supreme Court precedent.

In *Pitts,* the court likewise noted that by the time of the petitioner's trial in 1985, "the *Batson*-type claim ... was familiar and had been asserted in many other cases." *Pitts,* 923 F.2d at 1572. For that reason, the court concluded "such a claim was reasonably available to petitioner Pitts in 1985 ... [and] was not so novel that failure to raise it in 1985 should be excused for cause." *Id.* at 1573. The court did address *Reed*'s "not reasonably available to counsel" standard for establishing cause but concluded the standard was not met. The court based this conclusion largely on its understanding that the Supreme Court's decision in *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434

(1986), reflects that a claim does not meet the *Reed* standard if defendants in other cases are asserting the same or similar claims prior to or concurrent with the petitioner's failure to raise his claim. *Pitts,* 923 F.2d at 1572. This Court respectfully disagrees; the Eleventh Circuit read too much into *Smith v. Murray,* and, in any event, that case is fundamentally different from this one and *Pitts* in a way that *Reed v. Ross* says is critical. In *Smith,* the prosecution introduced, at the sentencing phase of a criminal trial, the contents of a pretrial interview concerning the crime that the defendant gave to a psychiatrist who examined him in connection with several possible psychiatric defenses. The defendant did not object to this on constitutional grounds at trial but later, in a state collateral proceeding, argued that admission of the interview violated his privilege against self-incrimination. The Court held that the novelty of this claim—at least at the time of the defendant's trial—did not provide cause for the default. The Court stated that

> the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was "available" at all. As petitioner has candidly conceded, various forms of the claim he now advances had been percolating in the lower courts for years at the time of his original appeal. Moreover, in this very case, an amicus before the Supreme Court of Virginia specifically argued that admission of [the psychiatrist's] testimony violated petitioner's rights under the Fifth and Sixth Amendments. Under these circumstances, it simply is not open to argument that the legal basis of the claim petitioner now presses on federal habeas was unavailable to counsel at the time of the direct appeal.

*Smith,* 477 U.S. at 537, 106 S.Ct. 2661. Though it is true in Richardson's case, as it was in *Smith,* that *Batson*-type claims had been "percolating in the lower courts" by the time of Richardson's trial, the crucial distinction is that unlike in *Smith v. Murray,* the claims in Richardson's case and in *Pitts* were *contrary to controlling Supreme Court precedent*—i.e., *Swain.* This, again, is critical to the *Reed* analysis of cause in a way not acknowledged by the court in *Pitts: Reed* says, without equivocation, that a claim is considered not to be reasonably available if controlling Supreme Court precedent would have to be overruled to permit the claim to succeed. That is the case here.

Finally, the Court respectfully disagrees with the analysis of the Eighth Circuit in *Ruff.* The court in *Ruff* acknowledged that "[a] novel legal theory can constitute cause to excuse a procedural default" but stated that to be "novel" a claim must be one whose " 'legal basis is not reasonably available to counsel.' " *Ruff,* 77 F.3d at 267 (quoting *Heffernan v. Norris,* 48 F.3d 331, 333 (8th Cir.1995), in turn quoting *Reed,* 468 U.S. at 16, 104 S.Ct. 2901). Because the "legal framework" underlying a *Batson*-type claim was established by *Swain,* the court stated, the claim was not novel. *Id.* The problem with this analysis, again, is that it considers only *Reed*'s expression of the general standard for cause—novelty—and disregards the Supreme Court's clear statement that for purposes of the analysis of cause for a default, a claim is not reasonably available, *without more,* when the claim is based on the Supreme Court's intervening overruling of its own precedent.[2]

---

2. *Ruff* also cites *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2639, as support for its decision, though its citation of the case is not explained. *Murray,* however, deals with the question of when counsel error constitutes cause for a default; it holds that a mistake

This Court's conclusion, contrary to *Jones, Pitts,* and *Ruff,* is that because the present case falls squarely within the Supreme Court's unequivocal statement in *Reed* that cause exists for a default when the Supreme Court's decision on which the habeas corpus petitioner's constitutional claim overruled prior governing precedent, Richardson has established cause for his trial counsel's failure to assert a *Batson*-type claim at trial.

In two cases, the Seventh Circuit has suggested that this aspect of *Reed* may no longer represent good law. Of course, neither this Court nor the Seventh Circuit can overrule or ignore a decision of the Supreme Court. *See, e.g., Thurston Motor Lines Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983); *United States v. Franklin,* 547 F.3d 726, 732–33 (7th Cir.2008); *Pryner v. Tractor Supply Co.,* 109 F.3d 354, 365 (7th Cir.1997). Though later Supreme Court decisions may " 'create[ ] a near certainty that only the occasion is needed for the pronouncement [by the Supreme Court] of the doom' of an obsolete doctrine," thus entitling a lower court to conclude the earlier Supreme Court decision has been implicitly overruled, *Levine v. Heffernan,* 864 F.2d 457, 461 (7th Cir.1988) (quoting *Olson v. Paine, Webber, Jackson & Curtis, Inc.,* 806 F.2d 731, 734 (7th Cir.1986)), that occurs only in "rare case[s]." *Id.*

This case does not, in this Court's view, present one of those unusual situations. The two Seventh Circuit cases suggest there is doubt regarding the continuing force of this aspect of *Reed* in light of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), in which the Supreme Court held that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure .... [A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. 1060 (emphasis in original). In *Prihoda v. McCaughtry,* 910 F.2d 1379 (7th Cir.1990), the court suggested that *Teague* left "no independent role for a doctrine treating legal change as 'cause.' " *Id.* at 1385–86. The court reiterated its doubt regarding *Reed*'s vitality in *Gacy v. Welborn,* 994 F.2d 305, 311 (7th Cir.1993).

*Prihoda* and *Gacy* indicate that if a habeas corpus petitioner relies, to show cause, on the novelty of a rule whose application to his case on collateral review would run afoul of *Teague,* his argument will fail. The idea is that *Reed* will not allow through the back door what *Teague* bars at the front door. But that is not what Richardson seeks. *Teague* bars application of a newly-created rule of constitutional criminal procedure via habeas corpus only if the new rule was created after "the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. Finality, for purposes of *Teague,* exists only after the process of direct review of a defendant's conviction has been completed, via (in a case like this one) the Supreme Court's denial of the defendant's petition for certiorari. *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) ("A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."); (*United*

that falls short of constitutionally ineffective assistance of counsel does not amount to cause. *Id. Murray* in no way undercuts or alters *Reed*'s expression of a completely separate means of establishing cause, namely the fact that the claim was not reasonably available (as *Reed* defines that term) to counsel at the time.

*States v. Marcello,* 212 F.3d 1005, 1008 (7th Cir.2000) (citing *Stringer v. Black,* 503 U.S. 222, 226, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), for the proposition that "for purposes of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), [a] habeas petition[er]'s conviction became final when petition for certiorari was denied")); *Jones v. Page,* 76 F.3d 831, 851 (7th Cir.1996) (citing *Caspari* ). Richardson's case was not yet final when *Batson* was decided, as it was still pending on direct appeal. Because *Batson* applies to Richardson's case, application of the *Reed* standard for determining cause does not allow him to take advantage, via the cause analysis, of a rule to whose benefit he is not entitled. Thus reliance on *Reed* in this case—or others in which a similar scenario is presented—does not run afoul of *Teague;* conversely, *Teague* does not suggest the non-viability of *Reed* in a case like this one.

In addition, and perhaps just as importantly, the Supreme Court itself has continued to indicate, long after *Teague,* the ongoing viability of *Reed* 's statement that cause exists when "the factual *or legal* basis for a claim was not reasonably available" at the time of the alleged default. *Strickler v. Greene,* 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Reed;* emphasis added); *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 10 n. 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

For these reasons, the Court concludes that Richardson has established cause for his trial counsel's default of his *Batson* claim.

### ii. Cause: Ineffective assistance of counsel

■ There is another potential basis upon which Richardson may establish cause for his procedural default: in failing to argue the *Batson* issue, his trial attorneys rendered constitutionally ineffective assistance of counsel. *See generally Coleman,* 501 U.S. at 753–54, 111 S.Ct. 2546; *Sanders v. Cotton,* 398 F.3d 572, 580 (7th Cir.2005) (" '[A]ttorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default[.]' ") (quoting *Franklin v. Gilmore,* 188 F.3d 877, 883 (7th Cir.1999)). This point and the *Reed* point are arguably mutually exclusive, but the Court addresses it nonetheless to ensure a complete record.

■ "[T]he assertion of ineffective assistance as a cause to excuse procedural default in a § 2254 proceeding is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis,* 328 F.3d 896, 900 (7th Cir.2003) (citing *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000)). The Court must therefore address whether Richardson has procedurally defaulted a claim of ineffective assistance of counsel.

■ In general, a claim that could have been presented on direct appeal but was not is considered by Illinois courts to have been forfeited ("waived," as Illinois courts typically say). *See, e.g., People v. Thompkins,* 161 Ill.2d 148, 157–58, 204 Ill.Dec. 147, 641 N.E.2d 371, 375–76 (1994). This rule encompasses claims of ineffective assistance of counsel. *See, e.g., People v. Orange,* 168 Ill.2d 138, 149, 213 Ill.Dec. 589, 659 N.E.2d 935, 940 (1995).

■ This "waiver" rule is relaxed when the facts needed to adjudicate trial counsel's competency do not appear in the trial record. *Id.; see also, e.g., People v. Steidl,* 177 Ill.2d 239, 250, 226 Ill.Dec. 592, 685 N.E.2d 1335, 1340 (1997). That is likely the case here. Richardson's trial counsel did not fully develop the record regarding (among other things) the race of numerous

excluded jurors, making proper review of a *Batson* claim nearly impossible at the time of Richardson's direct appeal.

■ But even had the trial record been sufficient to permit assertion of a claim of ineffective assistance of trial counsel on direct appeal—an argument that Richardson's appellate counsel did not make—a defendant avoids Illinois' waiver rule if he asserts in a post-conviction petition, as Richardson did, that his appellate counsel was ineffective in failing to assert the underlying claim on direct appeal. *See, e.g., People v. Turner,* 187 Ill.2d 406, 413, 241 Ill.Dec. 596, 719 N.E.2d 725, 729 (1999). In short, Richardson has not defaulted his ineffective assistance claim as cause for the procedural default of his *Batson* claim.

The next question is whether Richardson has, in fact, established cause for the default of the *Batson* claim via his claim of ineffective assistance of counsel. This is a question of federal law. *See, e.g., Murray,* 477 U.S. at 489, 106 S.Ct. 2639.

■ The Illinois Supreme Court considered and rejected Richardson's ineffective assistance claim on the appeal from the denial of Richardson's post-conviction petition. One question, not addressed by the parties, is whether 28 U.S.C. § 2254(d) applies to the state court's determination of this point. Under that provision,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The language of section 2254(d) suggests that it does not apply to an ineffective assistance claim embedded within the "cause" aspect of a cause-and-prejudice analysis. Specifically, finding cause that allows a habeas corpus petitioner to present a defaulted claim does not amount to "grant[ing] [a writ of habeas corpus] with respect to [a] claim that was adjudicated on the merits in State court proceedings" and thus does not appear to implicate section 2254(d). The Court also notes that the presumption of correctness applied under 28 U.S.C. § 2254(e)(1) to a state court's "determination of a factual issue" does not govern mixed law/fact determinations like the question of whether a lawyer has rendered constitutionally ineffective assistance. *See, e.g., Thompson v. Keohane,* 516 U.S. 99, 108–12, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (former version of statutory presumption of correctness; ultimate question of effectiveness of counsel's assistance is not governed by presumption).

The Court nonetheless assumes, at least for purposes of the preliminary assessment of the cause issue that the Court is making in this decision, that section 2254(e) actually does apply to the Illinois Supreme Court's determination that Richardson's counsel did not render ineffective assistance. With that in mind, the state court's determination appears to this Court to have involved an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(e)(1 & 2). The Illinois Supreme Court articulated the correct standard for assessing ineffective assistance claims, *see Richardson,* 189 Ill.2d at 411, 245 Ill.Dec. 109, 727 N.E.2d at 369, but it addressed the wrong issue.

The court said that Richardson's lawyer was not ineffective "by failing to make an essentially futile *Swain* claim." *Id.* at 412, 245 Ill.Dec. 109, 727 N.E.2d 362, 245 Ill. Dec. 109, 727 N.E.2d at 369. Taken on its own terms, that statement is unobjectionable; as this Court has noted, Richardson's trial counsel would not have gotten even to first base under *Swain* had he argued that the prosecution's exercise of its peremptory challenges in Richardson's own case ran afoul of *Swain.* But that was not the real issue. The question was actually whether Richardson's counsel should have asserted what one might call a proto-*Batson* objection—not an objection that the prosecution had violated *Swain,* but rather an objection that *Swain* did not supply the proper standard of review and that under a proper standard (the one later recognized in *Batson*), the prosecution had violated Richardson's rights in exercising its peremptory challenges in his case. In short, the state court did not deal with the ineffective assistance issue that Richardson presented. This Court therefore proceeds to address that point.

▮ The reasonableness of counsel's challenged conduct must, of course, be assessed as of the time of the conduct. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court acknowledges that the significant weight of authority holds that an attorney's failure to anticipate a change in the law can only rarely amount to constitutionally ineffective assistance. *See, e.g., United States v. Davies,* 394 F.3d 182, 189 (3d Cir.2005); *Valenzuela v. United States,* 261 F.3d 694, 700 (7th Cir.2001); *Lilly v. Gilmore,* 988 F.2d 783, 786 (7th Cir.1993). But rarely does not mean never. Certain circumstances particular to the *Batson* issue as it relates to Richardson, not addressed or acknowledged by the Illinois Supreme Court, suggest that Richardson's

case may present one of those rare situations.

First, the Illinois reports are replete with cases in which, prior to *Batson,* Illinois criminal trial lawyers made proto-*Batson* objections. From what the Court can glean from these decisions, making such objections was very much par for the course even before jury selection began in Richardson's case in late March 1984. Indeed, Richardson argued in a memorandum filed in his post-conviction case—and the state did not dispute—that the Cook County Public Defender's Office, which represented Richardson, had a standing policy at that time to preserve the record regarding apparently race-based peremptory challenges, to anticipate hoped-for developments in the law.

Second, and somewhat peculiar to Illinois, is the history of the case of *People v. Payne.* In May 1982, the Illinois Appellate Court for the First District decided that despite *Swain*—a Fourteenth Amendment equal protection decision—a defendant could make out a claim for denial of his Sixth Amendment right to a jury drawn from a fair cross-section of the community based upon the prosecution's racially-based use of its peremptory challenges in a particular case, and did not have to show this had occurred "in case after case," as *Swain* required for equal protection purposes. *People v. Payne,* 106 Ill.App.3d 1034, 1042–43, 62 Ill.Dec. 744, 436 N.E.2d 1046, 1052–53 (1982). Though the Illinois Supreme Court held otherwise in late May 1983, *see People v. Williams,* 97 Ill.2d 252, 274–80, 73 Ill.Dec. 360, 454 N.E.2d 220, 230–33 (1983), and reversed the appellate court's *Payne* decision in early December 1983, *see People v. Payne,* 99 Ill.2d 135, 75 Ill.Dec. 643, 457 N.E.2d 1202 (1983), at the time jury selection began in Richardson's case, petitions for certiorari were still pending in both the *Payne* and

*Williams* cases (certiorari was denied in *Williams* in mid-May 1984 and in *Payne in* mid-November 1984).[3] In short, the issue was still an open one at the relevant time. More broadly, it is beyond dispute that the argument for a new, post-*Swain* rule had gained significant and well-publicized traction in Illinois long before Richardson's trial.

For these reasons, the usual rule that the Sixth Amendment does not require a lawyer to anticipate changes in the law might not carry the day in Richardson's case—a capital murder case in which Richardson's life was at stake. *Cf. Govt. of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989) (finding ineffective assistance in defense counsel's failure, despite a request by the defendant, to make a proto-*Batson* objection before *Batson* was decided); *but cf. Randolph v. Delo,* 952 F.2d 243, 246 (8th Cir.1991) (declining to find ineffective assistance in defense counsel's failure to object to prosecution's use of peremptory challenges at a trial held two days before the decision in *Batson,* and failure to include the argument in a motion for new trial filed after *Batson,* albeit for strategic reasons).[4]

Given these circumstances, the Court concludes that it is appropriate to expand the record and consider additional evidence regarding the ineffective assistance issue, whether from trial counsel, expert witnesses, and/or other witnesses with knowledge of the state of the law and prevailing practice at the time of Richardson's trial.

### iii. Prejudice

To fulfill the prejudice aspect of the cause-and-prejudice test, Richardson must show that the cause element worked to his " '*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *See Murray v. Carrier,* 477 U.S. at 494, 106 S.Ct. 2639 (emphasis in original; internal quotation marks and citation omitted).

If, as Richardson contends, the prosecution violated his equal protection rights by striking jurors because of their race, than there is no question his trial was infected with error of constitutional dimensions. This inquiry, however, is intertwined with the ultimate merits of Richardson's *Batson* claim, which in turn may depend on the further development of the record. As a result, the Court cannot determine at this stage whether Richardson has satisfied the test for prejudice. That determination will have to await the hearing on the *Batson*

---

**3.** Payne, like Richardson, was represented by the Cook County Public Defender's Office.

**4.** The Court also notes the existence of an unfortunate catch–22 lying in the fact that several courts have found a not-yet-recognized claim to be sufficiently well known to lawyers to render it "reasonably available" for purposes of the *Reed* cause analysis but still unrecognized and thus not a basis to find ineffective assistance for failure to assert the claim. *See, e.g., Ruff,* 77 F.3d at 267; *Pitts,* 923 F.2d at 1572–73; *Jones,* 864 F.2d at 363–64. The Court, as noted above, disagrees with those courts' analysis of the *Reed* issue. But assuming those courts are correct on that point, this Court respectfully disagrees with then on the ineffective assistance issue.

Though the Court acknowledges these courts' conclusions that the *Reed* standard is not a precise mirror image of the standard for ineffective assistance, it defies common sense to hold that an attorney's failure to assert a claim that, based on legal developments, was known well enough to be reasonably available does not amount to ineffective assistance in a case like this one. If the type of claim was that well known—as appears to have been the case with proto-*Batson* claims for Illinois defense lawyers as of 1984—it is hard to see in a case like this one how the failure to assert it would amount to anything other than performance below an objective standard of reasonableness.

issue that the Court orders in this decision.

## 2. Evidentiary hearing

### a. Ineffective assistance / "cause" issue

■■ As the Court stated earlier, it has determined that expansion of the record is appropriate regarding Richardson's contention that he has cause for his default of the *Batson* claim based on ineffective assistance of counsel. Determination of whether to hold an evidentiary hearing on an issue of cause for a procedural default is not subject to the limitations on evidentiary hearings in habeas corpus cases imposed by 28 U.S.C. § 2254(e)(2). *See, e.g., Cristin v. Brennan,* 281 F.3d 404, 412–13 (3d Cir.2002). Rather, that determination is governed by the pre-section 2254(e)(2) standard, under which an evidentiary hearing to supplement the state court record is appropriate if the petitioner has alleged facts that would entitle him to relief and the state courts, for reasons beyond his control, did not consider his claim in a full and fair hearing. *See, e.g., Hampton v. Leibach,* 347 F.3d 219, 234 (7th Cir.2003) (identifying pre-section 2254(e)(2) standard). The short answer to this question is that, as discussed earlier, Richardson has alleged facts that would amount to ineffective assistance, and he specifically requested a hearing on his state post-conviction petition, in which he asserted the ineffective assistance claim, but was denied a hearing by the state court.

### b. Merits of *Batson* claim

The state argues that Richardson is not entitled to an evidentiary hearing that would expand the record on his *Batson* claim because he was not diligent in developing the record in the manner prescribed by state law. Specifically, the state argues that Richardson failed to explain to the post-conviction trial court why he could not provide any information about the racial background of the three prospective jurors struck by the state whose race remains unknown (Smith–King, Tolbert, and McDonald). A provision of the Illinois Post–Conviction Hearing Act, 725 ILCS 5/122–2, requires that petitioners explain any gaps in the information supporting the allegations contained in their petitions. The state contends that Richardson's failure to explain why he could not produce information about the race of these three jurors "do[es] not bespeak diligence." Resp. Mem. at 10. The state also argues that Richardson's failure to object to the state's use of its peremptory challenges at trial or on direct appeal shows a lack of the required diligence. Resp. Mem. at 6–7.

Richardson argues that the state's position evinces a fundamental misreading of the record. Specifically, he highlights the investigative efforts of post-conviction counsel to ascertain the race of the challenged members of the venire. These efforts resulted in affidavits or other material showing the race of thirteen of the sixteen venire members the prosecution struck. *See* Richardson Mem., Aimen Aff. at 2–3. Additionally, Richardson's post-conviction counsel requested an evidentiary hearing at which he could have explored further regarding the race of the other three prospective jurors that the prosecution had struck and to elicit other evidence relevant to the *Batson* inquiry. The post-conviction trial court denied Richardson's request for an evidentiary hearing.

The Court considers first the state's second argument—that Richardson's lack of diligence is shown by his trial and appellate counsel's failure to preserve the record and raise a *Batson* objection. The Court has, in effect, dealt with this contention in its discussion of the issue of cause. The Court also notes that state's argu-

ment, if accepted, effectively would eliminate the possibility of a hearing in most habeas corpus cases in which the petitioner's claim was procedurally defaulted, even if the petitioner has shown cause excusing the default.

■■■ The state's other argument is that 28 U.S.C. § 2254(e)(2) precludes an evidentiary hearing in this case. Under that provision,

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court addressed the meaning of section 2254(e)(2) in *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). It explained that the "failed to develop the factual basis" clause that appears at the start of section 2254(e)(2) is a "conditional clause" that must be considered as a threshold matter to determine whether section 2254(e)(2) applies in a particular case. *Id.* at 431, 120 S.Ct. 1479. "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attrib-

utable to the prisoner or the prisoner's counsel." *Id.* at 432, 120 S.Ct. 1479. Importantly, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435, 120 S.Ct. 1479.

As the Court made clear in *Williams*, this diligence inquiry precedes the analysis under sub-sections (A) and (B) of section 2254(e)(2). In *Owens v. Frank*, 394 F.3d 490 (7th Cir.2005), a case in which a habeas corpus petitioner sought to supplement an underdeveloped state court record with evidence submitted for the first time in the district court, the Seventh Circuit held that "[i]f [petitioner] establishes that he was diligent in his attempts to develop the factual record in the state court, he does not have to satisfy the remaining provisions of § 2254(e)(2) in order to obtain an evidentiary hearing." *Id.* at 499 (citing *Williams*, 529 U.S. at 435, 120 S.Ct. 1479).

In *Williams*, the Supreme Court determined that the petitioner had been diligent in attempting to develop the record in state court for his juror bias and prosecutorial misconduct claims. *Williams*, 529 U.S. at 440, 120 S.Ct. 1479. Specifically, the petitioner had asked the state court to appoint a private investigator to inquire into alleged irregularities in empaneling the jury. *Id.* at 442, 120 S.Ct. 1479. The state court denied the motion. After the petitioner filed his federal habeas corpus petition, an investigator for the petitioner discovered that the key witness for the prosecution and a juror had been married. The investigator also discovered that a prosecuting attorney had provided legal services to the couple when they divorced. The Supreme Court held that the petitioner's request for an investigator in the state court meant he had exercised diligence in that court, and thus section 2254(e)(2)'s limitation on hearings in federal habeas

corpus cases did not come into play. *See id.* at 443, 120 S.Ct. 1479.

■ In Richardson's case, his post-conviction counsel, Thomas Peters and Julie Aimen, reviewed the transcripts of the jury selection process, identified the members of the venire whom the state had struck, and sought out these members to verify their race. *See* Richardson Mem., Aimen Aff. at 2–3. The trial record provided information regarding the race of some members of the venire. *See, e.g.,* Trial Tr. vol. 2 at 123 (THE COURT: "[W]ould the fact [that] the victim is white and Floyd is black and you are black in any way affect your ability to give both sides a fair and impartial trial?" A: "No."). The trial record left unclear, however, the race of other members of the venire. *See id.* at 172–73 (THE COURT: "I discussed it with Mr. Gilmore, the race of the defendant and the victim and your own. Do you understand what I am talking about?" A: "Yes." THE COURT: "Does that pose you any problem as far as being a fair juror here?" A: "No.").

Aimen attests that she and Peters made extensive efforts to obtain additional information on the members of the jury venire chosen to serve and those who were struck from the panel. *See* Richardson Mem., Aimen Aff. at 2. Among other things, Aimen and Peters carefully reviewed the transcript of the jury selection process to glean information from the transcript. *Id.* They also obtained an order from the Circuit Court directing the jury commissioner at the Markham courthouse to produce the jury cards, summons, or both for all venire members. *Id.* After receiving these materials, they sought out the venire members in order to determine or verify their race. *Id.* Aimen and Peters prepared affidavits for the venire members they were able to find and had those affidavits signed and filed with the post-conviction trial court. *Id.* at 2–3.

Richardson's counsel also engaged the help of the Capital Resource Center to seek out these members, but their assistance was hampered by inadequate funding. *See* Richardson Mem., Aimen Aff. at 2 and Ex. A9. After ascertaining that twelve of the sixteen members of the venire whom the state had struck peremptorily were African–American, Richardson's counsel requested an evidentiary hearing to reconstruct what happened at jury selection and hear testimony regarding the race of the remaining members whose race was unknown.[5] The state court judge denied Richardson's request for an evidentiary hearing. Even after oral argument on the state's motion to dismiss Richardson's post-conviction petition, counsel continued their search to identify the race of these remaining members. Six days after oral argument, counsel submitted to the circuit court the affidavit of Alberta Tucker, one of the four remaining struck venire members whose race was unknown. In her affidavit, Tucker identified herself as African–American. And as noted earlier, Aimen also explained to the circuit court when arguing for an evidentiary hearing that she had extensive notes that indicated to her that the remaining members of the venire struck by the prosecution were also all African–American. *See* Richardson Mem., Aimen Aff. at 3.

In sum, Richardson was able to determine the race of thirteen of the sixteen members of the venire that the prosecution had struck. All thirteen were African–American. Richardson made exten-

---

5. At a September 24, 1996 status hearing, Richardson's counsel explained to the court that "[w]e can't reconstruct without a hearing everything that happened [at voir dire]." *See* Richardson. Mem., Ex. A, at 23.

sive investigative efforts, but the race of three members of the venire remained unknown. Finally, Richardson unsuccessfully requested an evidentiary hearing to help in ascertaining the race of the three jurors, as well as to demonstrate that the prosecution violated *Batson* in exercising its peremptory challenges. The Court concludes that Richardson exercised due diligence in attempting to develop the record during the course of the state court proceedings, meaning that the requirements of section 2254(e)(2) do not control whether the Court may conduct an evidentiary hearing on his *Batson* claim. *See, e.g., Hampton,* 347 F.3d at 234.

▆ The state also argues that Richardson's failure to object to the state's use of its peremptory challenges at trial or his direct appeal shows a lack of the required diligence. The Court has already determined that this procedural default is excused (or at least may be excused) because of Richardson's showing of cause. The state's argument that this default also shows a lack of diligence for section 2254(e)(2) purposes conflates two distinct inquiries. *See Hampton,* 347 F.3d at 241; *Burris v. Parke,* 116 F.3d 256, 258–59 (7th Cir.1997) (holding that section 2254(e)(2) "differs from [pre-AEDPA] law by not asking whether [failure to develop a factual basis in state court] is a default under state practice in the sense that it would prevent the prisoner from obtaining a[n evidentiary] hearing in state court. Section 2254(e)(2) is a rule of federal law, liberated from the independent-and-adequate state grounds doctrine."). In *Hampton,* the Seventh Circuit made clear that the inquiry into the petitioner's diligence in the state courts for purposes of section 2254(e)(2)'s conditional clause differs from the procedural default inquiry. Procedural default is typically a question of state law, whereas "it is the federal court that must decide whether [failure to develop the factual basis] forecloses expansion of the record pursuant to section 2254(e)(2)." *Hampton,* 347 F.3d at 241.

The *Hampton* court also noted that although the pleading requirements of Illinois's post-conviction statute require affidavits that explain gaps in the petitioner's evidence, "section 2254(e)(2) does not require the petitioner to have explained his failure to develop the factual basis for his claim while still in the state forum." *Id.* at 242 n. 9. This analysis further underscores the distinction between state-law-based procedural default and the section 2254(e)(2)'s threshold diligence inquiry.

In sum, the Court finds that Richardson's efforts in the state court establish that he was diligent in his attempts to develop the factual record. For this reason, Richardson has satisfied the conditional clause in section 2254(e)(2) and need not meet its remaining requirements. *See Williams,* 529 U.S. at 435, 120 S.Ct. 1479; *Owens,* 394 F.3d at 499–500.

Because section 2254(e)(2) has not been triggered, the Court applies the law as it existed prior to that statute's 1996 adoption to determine whether an evidentiary hearing is appropriate. *See Matheney v. Anderson,* 253 F.3d 1025, 1029 (7th Cir. 2001); *see also Hampton,* 347 F.3d at 234. That standard, as indicated earlier, permits an evidentiary hearing in federal court if the petitioner has alleged facts that would entitle him to relief and the state court, for reasons beyond the petitioner's control, did not consider his claim in a full and fair hearing. "A full and fair hearing is one that afforded the petitioner a complete opportunity to present the facts relevant to his constitutional claim." *Hampton,* 347 F.3d at 235. Given the state trial court's denial of an evidentiary hearing, that plainly did not occur in Richardson's case.

With regard to the first part of the test, Richardson has alleged that the state exercised its peremptory challenges in a racially discriminatory way in violation of *Batson*. Specifically, he has alleged that every one of the sixteen peremptory challenges the state exercised was used to exclude an African–American venire member. Were that established, then at the very least Richardson would have a strong inference of the discriminatory intent required to sustain a *Batson* challenge. In short, Richardson has met the pre-section 2254(e)(2) standard for allowing an evidentiary hearing.

### 3. Deference to trial court's finding on *Batson* claim

The state argues that if the Court finds it is appropriate to consider the merits of Richardson's *Batson* claim, it should defer to the findings made by the state trial court judge who considered Richardson's post-conviction petition and, in an alternative holding, rejected his *Batson* claim on the merits. According to the state, in applying section 2254(d), quoted earlier, a federal court must look to the last state court that addressed the habeas corpus petitioner's claim on the merits. For this proposition, the state relies on *Garth v. Davis*, 470 F.3d 702 (7th Cir.2006). *Garth*, however, does not control the outcome here. In that case, and in those on which it relied (*McFowler v. Jaimet*, 349 F.3d 436 (7th Cir.2003), and *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir.2002), on which *McFowler* relied), a state appellate court had dealt with the habeas corpus petitioner's claims on their merits, and that decision was the one reviewed under the standard supplied by section 2254(d).

In this case, by contrast, the last state court to address Richardson's *Batson* claim, the Illinois Supreme Court, did not decide the claim on its merits but rather held it had been forfeited. Given that scenario, *Garth*, *McFowler*, and *Schultz* are not on point. Rather, the governing decision is *Liegakos*, which involved a scenario like the one in this case: a state trial court addressed and rejected the claim on its merits, but the state appellate court rejected it on forfeiture/waiver grounds without addressing the merits. In that situation, the Seventh Circuit concluded in *Liegakos*, section 2254(d) does not apply, because "it affects only a 'claim that adjudicated on the merits in State court proceedings,'" and a claim is considered to have been adjudicated on the merits only if the last state court to issue an opinion dealt with the claim on the merits. *Liegakos*, 106 F.3d at 1385. In Richardson's case, because the last state court to issue an opinion dealt with the claim on procedural grounds rather than on the merits, section 2254(d) does not apply.[6]

### 4. Proposal to remand case to state court

The state has proposed remanding the case to state court to conduct the necessary evidentiary hearing. That is inappropriate for three reasons. First, the Court has determined to conduct an evidentiary hearing regarding Richardson's contention that counsel's ineffective assistance provides cause for the procedural default of his *Batson* claim. That hearing, which involves a federal issue peculiar to habeas corpus cases, can only be conducted in this Court. Thus the Court will already be conducting an evidentiary hear-

---

**6.** Even were the Court to apply section 2254(d), it is not now deciding the merits of Richardson's claim, so it would be inappropriate to address, in section 2254(d) terms, the state trial court's decision, particularly because the Court is ordering an evidentiary hearing on the *Batson* claim.

ing regarding the conduct of Richardson's trial counsel. In addition, there is good reason to believe that the scope of that hearing will overlap to some extent with the substantive *Batson* issue.

Second, Richardson specifically asked the state court to hold an evidentiary hearing, but it declined to do so. Under the circumstances, there is no reason to give that court a second try.

Third, Richardson's case has experienced unusually long delays at various stages (over six years at the post-conviction trial court level alone)—including, the Court must confess, in the proceedings here. The Court intends to deal with the case on a firm and expeditious schedule from here on in. Sending the case back to state court for a hearing likely would lead to unnecessary delay, both in allowing the state court judge to get up to speed, and by adding a further layer of review in this Court after the state court made its ruling.

### Conclusion

For the reasons stated above, the Court orders an evidentiary hearing, both on the issue of cause for the procedural default of Richardson's *Batson* claim, and on the *Batson* claim itself. The two matters will be combined in a single hearing. The Court considers the hearing to have begun, based on the affidavits and other materials first submitted to the state post-conviction court and now offered in this Court.

Counsel should be prepared at the hearing to address all aspects of the *Batson* analysis, and not just issue of whether Richardson can establish a *prima facie* case. It is reasonable to believe that by the time of the hearing, both sides will know the races of the remaining jurors struck by the prosecution, as well as the racial composition of the venire as a whole and of the selected jury. As a result, counsel should have no unreasonable difficulty preparing to address at the hearing all

aspects of the *Batson* analysis. Preparation may require both sides to issue subpoenas for records and to take depositions; they have leave to do so.

Fact discovery is to be completed by March 20, 2009. Any expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), which the Court will apply in this case, are to be made by April 10, 2009, and rebuttal disclosures under that same Rule are to be made by May 1, 2009. Depositions of any expert witnesses are to be completed by May 15, 2009. The completion of the evidentiary hearing will take place on May 20–22, 2009, starting at 10:00 a.m. on each date. The case is set for a status hearing on December 15, 2008 at 9:30 a.m.